THE STATE v. LEE M. PIERCE, Appellant.—7 S. W. (2d) 269.

Division Two, May 25, 1928.

*Laughlin, Frumberg, Blodgett & Russell* for appellant.

*North T. Gentry*, Attorney-General, and *Claud Curtis*, Special Assistant Attorney-General, for respondent.

BLAIR, J.—In the Circuit Court of the City of St. Louis, appellant was convicted of the crime of obtaining money under false pretenses and was sentenced to imprisonment in the State Penitentiary for a term of three years. Thereafter an appeal to this court was allowed him.

In substance the indictment charged that on July 27, 1924, appellant was an officer and agent of the North Side Nash Company and, with intent to defraud, falsely, etc., represented to the officers and agents of the Remedial System of Loaning, Inc., a corporation, that the North Side Nash Company was the owner of a certain described automobile and had sold said automobile to one Frank L. Hazelrigg on July 27, 1924, and that, in payment therefor, said Hazelrigg had executed and delivered to said North Side Nash Company his promissory note for $1699.50, payable in installments within four months from date, together with a mortgage on said automobile securing said note; that the officers and agents of said Remedial System of Loaning, Inc., believing said false, etc., representations of appellant to be true and relying thereon and being deceived thereby, were induced to and did on said date and at said city loan ''the said Lee M. Pierce, as officer and agent of the North Side Nash Co., a corporation,'' the sum of $1650 and accepted as security therefor said note and mortgage and that appellant, as such officer and agent, then and there and thereby fraudulently, etc., obtained from said Remedial System of Loaning, Inc., the sum of $1650, lawful money of the United States, etc.

Then followed allegations that, as appellant well knew, the North Side Nash Company did not own said automobile and had not sold the same to said Hazelrigg and that said Hazelrigg had not executed a mortgage on said automobile and that the payment of said note

was not secured by said mortgage and that "said note and mortgage were false and bogus and executed by defendant to the Remedial System of Loaning, Inc., a corporation, for the purpose and with the felonious intent to cheat and defraud said company." The indictment appears to have been drawn under Section 3343, Revised Statutes 1919. The trial court's instructions were framed under that section. The sufficiency of the indictment and the propriety of instructions under said section were not assailed in this court nor in the motion for new trial below. We are satisfied that the indictment appropriately charged an offense under said Section 3343. The verdict was in proper form, responsive to the indictment and authorized the judgment which was afterward entered thereon in due and approved form.

The main contention is that the evidence did not establish the charge contained in the indictment and was insufficient to justify submission of the case to the jury. Appellant contented himself with offering a demurrer to the State's evidence, stood thereon when the same was overruled, and offered no evidence in his own behalf.

Briefly stated, the evidence offered by the State tended to prove that appellant was president of the North Side Nash Company, a corporation, and that one Green, who was separately indicted, was secretary of said company, as well as secretary of the Remedial System of Loaning, Inc. The other officers of the latter company did not know of Green's official connection with the North Side Nash Company. The Southwest Nash Company of St. Louis was distributor of Nash automobiles for the State of Missouri and southern Illinois, and the North Side Nash Company was under contract to buy all its Nash automobiles from said Southwest Nash Company.

The Remedial System of Loaning, Inc., was engaged, among other things, in loaning money on notes and mortgages taken by the seller when automobiles were sold on installments. Apparently quite an extended course of dealing had occurred between said loaning company and the North Side Nash Company. When the North Side Nash Company would sell an automobile on installments, it would take a note payable to it at certain later dates in stated amounts and would take from the purchaser a mortgage upon the automobile sold as security for such note. Such note and mortgage would then be endorsed over to the loaning company and it would issue its check, payable to the North Side Nash Company, signed by Green, as secretary, and countersigned by the cashier of the loaning company.

The evidence justifies the inference that appellant Pierce and said Green conceived a plan or scheme to defraud the loaning company by means of notes and mortgages executed on fictitious sales of automobiles. About fifteen such sales, involving about $30,000, were

shown to have been represented as made. The Hazelrigg transaction was one of these. It was the transaction upon which the prosecution was founded and appears to have been typical of the others.

Hazelrigg was shop foreman for the North Side Nash Company and seems to have been an innocent and unsuspecting tool of Pierce and Green. Upon solicitation by Pierce, Hazelrigg was induced to sign a note for $1699.50, payable to the North Side Nash Company and to execute a chattel mortgage upon an imaginary automobile to secure said note. He did this upon Pierce's representations that the North Side Nash Company needed another automobile for display or demonstration purposes and that Hazelrigg would incur no personal liability to pay the note. Green assured him that everything would be all right. Afterward, when a booklet was sent to Hazelrigg showing when the payments would be due and the amounts thereof, Green took the booklet and assured Hazelrigg that he need not concern himself further about the matter. Hazelrigg heard nothing more from it until subsequent investigation disclosed the fraudulent scheme.

The Hazelrigg note and mortgage described an automobile of the model, serial number and motor number alleged in the indictment. It appears that no such sale ever occurred and that the North Side Nash Company never purchased such an automobile from the Southwest Nash Company.

One Cohen, who was bookkeeper for the North Side Nash Company, seems to have been a party to the fraudulent scheme to the extent, at least, of keeping a so-called "Black Book." Whether he profited personally does not appear. He testified for the State and assumed the attitude of a humble servant, unquestioningly following orders of his superiors.

In this book and at appellant's direction and with his full knowledge, Cohen kept a separate record of fictitious sales. The time that payments were due on each note was carefully recorded so that there would be no "slip up" with the Remedial System of Loaning, Inc. Appellant and Green frequently consulted the book. It does not definitely appear in evidence, but the inference is justified, that Pierce and Green, out of their personal funds, made payments from time to time, as they fell due, in order to avoid suspicion on the part of the loaning company.

It appears that Green was authorized to approve loans under $5000, without referring the same to his board of directors. Taking advantage of such authority, he would approve the notes and mortgages given in connection with such fictitious sales. He would draw a check, and the note and mortgage would be examined by the cashier of the loaning company and, if the cashier found them regu-

lar in form and it appeared that the mortgage had been properly filed for record, he would countersign the check and return the papers to Green. In the Hazelrigg deal, the mortgage was duly filed for record. Said mortgage was indorsed on the back as follows:

"For value received, the mortgagee named in the within chattel mortgage does hereby sell, assign and transfer to Remedial System of Loaning, Inc., of St. Louis, all of said mortgagee's right, title and interest in and to said chattel mortgage and the note secured thereby; and authorize said Remedial System of Loaning, Inc., to collect and discharge the same; also that the property described therein was sold by the undersigned to the mortgagor; that he had authority to sell the same; that said property was not consigned to the undersigned nor were there any conditions which prevented the undersigned from conveying absolute title to the said mortgagor; and that the said property is free and clear of any and every claim of any kind whatsoever, except present mortgage herein assigned, and this statement and representation is made knowing and intending that Remedial System of Loaning, Inc., shall rely upon the same in the purchase of said note and chattel mortgage."

Thereafter a check for $4122.82 was issued, which the proof shows was issued by the Remedial System of Loaning, Inc., payable to the North Side Nash Company, in payment of loans upon or purchases of the Hazelrigg and other bogus notes and mortgages. This check went into the record as State's Exhibit 12. We copy same:

Remedial System of Loaning,
303-304 Chemical Bldg.,
8th and Olive Sts.,

St. Louis, Mo., July 28, 1924.
No. 3741

Pay to the order of North Side Nash Co.,                    $4122.82
Exactly Four Thousand One Hundred Twenty Two dollars
    eighty-two cents.
To The Merchants-Laclede National Bank, of St. Louis, Mo.

.REMEDIAL SYSTEM OF LOANING, INC.,
(Signed)     J. F. Green,                    Pres. Sec'y.
(Signed)     F. A. Schwartz,                 Cashier.

(Endorsements on back:)
North Side Nash Co.
(Signed and scratched:)   L. M. Pierce, Pres.
                          G. M. Harris.
(Signed:)                 L. M. Pierce, Pres.
(Stamp:) Pay Liberty Central Trust Co., St. Louis, Mo., or order.
    Remedial System of Loaning, Inc.
(Stamp:)   St. Louis Clearing House, 14, Jul. 30, 1924.
All prior endorsements guaranteed.  Liberty Central Trust Co.
(Perforated:) Paid.

The contention of appellant concerning the insufficiency of the evidence appears from the following quotation from his "Points and Authorities":

"The trial court should have directed a verdict of not guilty, for the reason that the State's case demonstrated conclusively that the defendant did not make the fraudulent representations charged in the indictment, but that all representations which were relied upon by the person alleged to have been defrauded were made by a third person."

This contention is no doubt partially based upon the fact that the written representation endorsed upon the back of the Hazelrigg mortgage was signed "North Side Nash Co. L. M. Pierce, Pres. by G. M. Harris." On the face of such endorsement it was represented that the automobile described had been actually and rightfully sold to Hazelrigg. That included the representations that the North Side Nash Company owned the automobile described and had good right to sell the same and had in fact done so and had taken a valid note and mortgage as part of the consideration of such sale. The endorsement concluded with the words: "This statement and representation is made knowing and intending that Remedial System of Loaning, Inc., shall rely upon the same in the purchase of said note and chattel mortgage."

We find no proof in the record that appellant authorized Harris to sign his name to the assignment of the Hazelrigg mortgage, if, in fact, it was not signed by appellant himself. But from the testimony of Hazelrigg and Cohen as to appellant's connection with the execution of the fictitious sale and the attendant execution upon his solicitation of a note and mortgage in connection therewith, the jury was fully authorized in finding that such assignment was either signed by appellant personally or by Harris with full authorization thereto by appellant. The endorsements on the check for $4122.82 show that the money realized from the loan, procured upon Hazelrigg's note and mortgage, actually came into appellant's hands.

The evidence discloses that appellant was not known to the officers of the loaning company, other than Green. Appellant contends that the record fails to show that he made any representations whatsoever to that company and discloses affirmatively that whatever representations were made to that company were made by Green. Without regard to the proof tending to establish a conspiracy between appellant and Green to defraud the loaning company (thereby making representations of Green in furtherance of such conspiracy the representations of appellant), we think there is abundant evidence that appellant personally made representations sufficient to authorize submission of that issue to the jury. The written endorsement on the back of the Hazelrigg mortgage was entirely sufficient for that purpose.

It will not do to contend (and we do not understand appellant so contends), that the Remedial System of Loaning, Inc., had knowledge

of the falsity of the representations made by appellant, merely because its secretary Green knew all about and participated in the fraudulent scheme. Under the circumstances here disclosed, the knowledge of Green was not the knowledge of his principal, the Remedial System of Loaning, Inc. His interest was adverse to that of the loaning company and he was not acting as its sole representative in making the loan. [Bartlett v. McCallister, 316 Mo. 129, 289 S. W. (Mo.) 814, l. c. 818, and cases there cited and discussed.]

An accountant testified that he made an examination of the books and affairs of the North Side Nash Company with a view to purchasing an interest therein and that appellant then told him that he and Green "had been manipulating mortgages for something of a year's period . . . and that he would have to assume the blame of it in order to protect Mr. Green's position. . . . They had been putting these fictitious mortgages through the Remedial Loaning Company for the past year." In view of this very incriminating and damaging testimony, appellant did not see fit to take the witness stand and enter any denial.

We are convinced that a case for the consideration of the jury was made by the uncontradicted evidence offered by the State. Appellant's contention that his demurrer to such evidence was improperly refused must therefore be overruled.

Appellant's contention that the court erred in the admission and exclusion of evidence and in the giving and the refusal of instructions and in failing to instruct on all the law of the case cannot be considered because the assignments of error in the motion for new trial, upon which such contentions purport to be based, are too general and indefinite to comply with Section 4079, Laws 1925, page 198. [State v. Standifer, 316 Mo. 49, 289 S. W. 856, and State v. Burrell, 298 Mo. 672, 252 S. W. 709.]

Paragraph VI of appellant's assignments of error in his brief in this court is that "said court erred for the reason set out in Point VI of points and authorities in stating to the jury during the trial as follows: 'I say the only question involved is as to whether or not the North Side Nash Company got the money on the strength of representations made here as shown by the testimony thus far.'"

A study of the motion for new trial fails to disclose any assignment of error therein, even purporting to preserve for review the propriety of this particular remark. For that reason the assignment of error made by appellant for the first time in this court cannot be considered.

Appellant assigns error in paragraph "ninth" of the motion for new trial, as follows:

"Ninth: For the reason that during the trial the defendant did not take the stand, and the Circuit Attorney, in his argument to the jury, stated that $30,000 had been secured by the defendant as the result of the scheme of false pretenses practiced by defendant on the Remedial System of Loaning, Inc. Defendant's counsel then and there excepted to the statement of the Circuit Attorney, for the reason that there was no evidence showing that any such amount of money was secured by a scheme that was similar to the one charged in the indictment. Whereupon, the court replied in substance: 'The State's witness testified that $30,000 had been so received and the defendant has not denied it'—and thereby violated the defendant's constitutional right guaranteed by Article II, Section 23, of the Constitution of Missouri—to which statement of the Circuit Attorney to the jury and the statement of the court, the defendant by his counsel then and there excepted."

The assignment made in the brief is not in the exact language, but clearly refers to the same incident. In order to show just what did occur during the argument, we quote from the record as follows:

"MR. BOWCOCK: Now then you have Lee Pierce asking, have Lee Pierce making a representation just as charged to the Remedial Loan Company, you have the evidence that the Loan Company knew nothing as to the connection of Green with the North Side Nash Company, you have the statement that they relied upon this representation of Pierce's, and O.K.'d. notes; you have evidence enough that they were deceived to the extent not only of that but of thirty thousand dollars. Now here we have other evidence than a note he gave—

"MR. BLODGETT: I want to except to that statement as to thirty thousand dollars.

"THE COURT: It was testified to in your hearing.

"MR. BLODGETT: But only over my objection.

"THE COURT: Oh no.

"MR. BLODGETT: Thirty thousand dollars; there is no evidence of thirty thousand dollars on a similar scheme.

"THE COURT: There was testimony here of it.

"MR. BLODGETT: Known fictitious?

"THE COURT: Yes, there were known fictitious deals totaling $30,000 and some odd hundred dollars.

"MR. BLODGETT: That is true—that is the testimony of one witness.

"THE COURT: *But it is in here, and it is undenied, so therefore counsel for the State has a right to comment on it in his argument.*"

It will be noted that the remark of the court which we have italicized made no specific reference to the failure of the appellant to testify or to his failure to deny the testimony as to the $30,000

loss by the Remedial System of Loaning Company, Inc. The remark of the court was directly in response to a remark of appellant's counsel that the $30,000 loss was shown by the testimony of only one witness. The court then said that the fact that the testimony was in and undenied gave the State a right to comment upon it. We fail to perceive any prejudicial error in this incident. [State v. DePriest, 288 Mo. 459, l. c. 468, 232 S. W. 83; State v. Fields, 234 Mo. 615, l. c. 625, 138 S. W. 518; State v. Steele, 280 Mo. 63, l. c. 71, 72, 217 S. W. 80; State v. Hughes, 258 Mo. 264, l. c. 271, 167 S. W. 529.]

Finding no reversible error in any of the assignments of error which we are authorized to consider, the judgment of the trial court is affirmed. All concur.