## STATE v. WHITLEDGE.

No. 43758.

Supreme Court of Missouri.

Division No. 2.

July 12, 1954.

R. P. Smith, Strom & Spradling, Cape Girardeau, for appellant.

John M. Dalton, Atty. Gen., Grover C. Huston, Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

The appellant, William P. Whitledge, Jr. has been found guilty of a statutory offense against property involving fraud, Ch. 561, RSMo 1949, V.A.M.S., and sentenced to two years' imprisonment. Specifically, the indictment upon which he was

convicted charged that on the 9th day of February 1951 he "did then and there wilfully, unlawfully and feloniously, with the intent to cheat and defraud, obtain from the Industrial Loan Company, a corporation, the sum of * * * $1,000, the property of the said Industrial Loan Company, by means of trick, deception and false and fraudulent pretenses, statements and representations, to the effect that the W & W Motor Company had sold and delivered to one Leo Miller, a certain 1949 Chrysler *ouple* (coupe) motor vehicle, Motor No. C45–26858; that the said Leo Miller was then and there the owner of the said motor vehicle and that a certain other 1949 Chrysler *couple* (coupe) then and there shown to one Robert Beckman, then and there an agent of the said Industrial Loan Company, was in fact the said Chrysler—club-*couple*, (coupe) Motor No. C45–26858, all of which pretenses, statements and representations were then and there false as the said defendant then and there well knew," and the Industrial Loan Company, relying on the representations, and being deceived thereby, gave up the sum of $1,000.

To understand the indictment and the surrounding facts and circumstances, it is first necessary to identify the parties connected with the transaction relied upon by the state. Formerly, the W & W Motor Company of Cape Girardeau consisted of W. P. Whitledge, Sr. and W. P. Whitledge, Jr., see State v. Whitledge, Mo., 266 S.W.2d 616. By February 1951 W. P. Whitledge, Jr. was no longer active in the W & W Motor Company, and was operating the Snappy Cab Company. Leo Miller, mentioned in the indictment and who, ostensibly, was a state's witness, was employed by W. P., Jr. and the Snappy Cab Company. Charles Musgraves, a fugitive, was once employed by the W & W Motor Company.

The facts of the transaction were that on the morning of February 9th Leo Miller appeared at the office of the Industrial Loan Company and applied to Mr. Beckman, the loan company's manager, for a loan of $1,000 on an automobile. Miller presented to Mr. Beckman exhibit A, a certificate of title to a 1949 Chrysler club coupe, motor number C45–26858, issued to the W & W Motor Company. According to Miller, Musgraves gave him the certificate of title at the office of the Snappy Cab Company and then drove him to the loan company office and parked the car, a 1949 Chrysler club coupe, across the street. The inference from the state's evidence is that the parked car was one registered in the name of Mrs. Windisch. Mr. Beckman did not check the motor number on the parked automobile and could not remember the color of it, but he assumed that it was the automobile described in the certificate of title, exhibit A. In the afternoon Miller, and his wife, returned to the loan company office and executed a note and chattel mortgage and Mr. Beckman closed the loan.

The fact of the matter was that Miller was not buying an automobile as he represented to Mr. Beckman and he did not receive any part of the loan. It was his idea that he was financing the car for Charley Musgraves. "At that time Charley had a Buick automobile which we were using as a taxicab and he claimed his mother, she was going to the hospital and she lived on the opposite side of town from the hospital and he was buying the Chrysler for her, and he told me he had paid $560 down on the car and had to pay the rest off and he couldn't get it financed in his name and he told me he had one already financed in his name, and he told me if I would finance it in my name he would give me a second mortgage on it and put the car in storage, or the car was to come back to me and I was to pay for it if he couldn't pay for it."

Miller did not recall that Bill Whitledge, Jr. went with him to the loan company office. He said that after he had applied for the loan he told Bill he was financing a car for Musgraves and asked him "what kind of a recommendation he could give on Charley Musgraves," and Bill said, "as far as I know he was *alright* (all right)." Mr. Beckman, referring to the certificate of title, exhibit A, said, "I can't recall

whether Whitledge, Jr. handed it to me, or laughed and asked me to make the check payable to them, but I won't make a positive statement." Subsequently, as to whether Whitledge was with Miller, Mr. Beckman said, "Maybe I had better amend and say might have been or as I recall, but I will state this, if young Whitledge wasn't with him I had gotten the call prior to that to take care of the loan because I wouldn't have handled it if I hadn't, and I want to make those statements because I am still of that opinion that he was there, but regardless of what Leo Miller said or didn't say I am still of that opinion * * *." Mr. Beckman issued a check, exhibit B, for the loan, in the sum of $1,-000 payable to W & W Motor Company, "1949 Chrysler, Motor No. C45–26858," and the check was endorsed "W & W Motor Company by Bill Whitledge." Miller says that he "turned the check over back to the Snappy Cab Company," he did not recall whether he gave it to Musgraves and he did not know who got it but both Bill and Musgraves were there when he returned with the check. Four payments of $80.80 were made on the loan, Miller says that he made one payment, and he does not know who made the other three. Musgraves gave him a check and some cash to make one payment, the check "bounced" and "Bill, Jr. gave me the balance to make good the check because I was working for him." Bill, Jr. also gave Miller two or three receipts for payments on the car and told him, since the car was financed in his name, that he should keep the receipts.

The history of the 1949 Chrysler club coupe identified in the certificate of title by its motor number, C45–26858, is this: Dr. Lonnie Brasher of Doniphan owned a 1949 Chrysler club coupe for which he had a Missouri certificate of title, number 3155230. Dr. Brasher sold the automobile and transferred his certificate of title, exhibit C, to Tanner & Son at Doniphan. According to W. P. Whitledge, Sr., testifying on behalf of his son, the son purchased Dr. Brasher's automobile at an auction at Sikeston for the W & W Motor Company. He said that they did not get the original title at that time but received instead an application for a duplicate title signed by Brasher. He says that after the loan on Dr. Brasher's car was paid off they received the original title certificate. According to him exhibits A and D, an original and a duplicate certificate of title, covered the same automobile, "They have the same number and the same description and I would take it they are the same automobile." His son, W. P., Jr. and J. B. Cargle, a notary public and an employee of the W & W Motor Company, took that Chrysler club coupe to Cairo, Illinois, on the 29th day of November, 1949, and sold it at the Fischel auction, Mrs. Fischel taking Bill Whitledge, Jr.'s acknowledgment on exhibit D. W. P. Whitledge, Sr. admitted and then denied that his son's signature appeared on the certificate of title, exhibit A. He said that the signature on exhibit B, the check, was not his son's signature. He said that the signatures on exhibits C, an application for a Missouri title, D, a duplicate certificate of title and E, another application for a title, were not his son's or "doesn't look like his signature back here." He did admit that the assignment on the back of exhibit D was his son's signature. As to the check, exhibit B, endorsed "W & W Motor Company by Bill Whitledge," Miller said, "W & W Motor Company, and looks like Bill Jr's, the rest of the writing does." J. B. Cargle, who was most familiar with the signature of W. P. Whitledge, Jr., examined the exhibits and it was his opinion, or he said that the signatures looked like Bill's.

In these circumstances it is urged that "there is no substantial evidence to show defendant's connection with or participation in the offense charged," and, therefore, the court should not have submitted the defendant's guilt to the jury. In this connection it is urged that the court erroneously admitted all these exhibits in evidence for the reason that they were not material to the offense charged and had no connection with the defendant. The inference the appellant draws is that Mus-

graves, without the knowledge or permission of the Whitledges, surreptitiously obtained the certificate of title and gave it to Miller. Of course, if the appellant had no knowledge of these exhibits or had not signed or endorsed them, or if they were not connected with this transaction, they would not be admissible in evidence in connection with this charge. State v. Eudaly, Mo., 188 S.W. 110. But as indicated exhibits A, B and D bore the appellant's signature, as the jury could find, and, according to his father, A and D were certificates of title to the same automobile, a 1949 Chrysler club coupe, motor number C45–26858.

■ As to the appellant, W. P. Whitledge, Jr., there are many disjointed, loose ends in this record, but abridged and reduced to its simplest terms the case against him is this: He knew that the 1949 Chrysler club coupe, motor number C45–26858, once owned by the W & W Motor Company, had been sold and its title delivered to a dealer in Cairo, Illinois. He knew it because he personally sold the automobile in November 1949. He may or may not have been present in the loan company office on February 9, 1951, when Miller presented exhibit A and applied for the $1,000 loan, representing that he was purchasing from W & W Motor Company a 1949 Chrysler club coupe, motor number C45–26858. Knowing that the automobile had been sold and that W & W Motor Company (formerly Whitledge, Sr. and Whitledge, Jr.) could not possibly have had a proper title to it and that Miller could not have purchased it from the motor company, he may or may not have silently stood by while Miller made the representations and laughingly requested that the check be made to the W & W Motor Company. But, whether he was there or not, the fact is, as the jury could find, he received and endorsed the $1,000 check, exhibit B. The check was payable to the W & W Motor Company and it recited "1949 Chrysler, Motor No. C45–26858," the only Chrysler automobile, according to Cargle, owned by the W & W Motor Company. In these circumstances the indictment charged and the evidence supported a conviction under V.A.M.S. Section 561.450, if not under Section 561.370. State v. Steele, 226 Mo. 583, 126 S.W. 406; State v. Pierce, 320 Mo. 209, 7 S.W.2d 269; State v. Clice, Mo., 252 S.W. 465; State v. Whitledge, supra.

■ It is urged that instructions two and four were prejudicially erroneous. It is argued that there was no evidentiary basis for instruction two. "Because all the evidence showed that Miller, at the request of Musgraves, committed the crime, it was particularly prejudicial for the Court to instruct the jury as it did in Instruction No. 4, that the acts of other persons were immaterial." The difficulty with the latter argument is that it assumes the uncontradicted fact to be that Miller, at the request of Musgraves, committed the crime. Miller so testified but the jury was not bound in any event to so find the facts. As indicated, despite what Miller and Musgraves may have done, the jury could have found the appellant guilty and their acts were immaterial. Instruction two told the jury that "it is not necessary for conviction that the defendant was personally present at the time the $1,000 was obtained from the Industrial Loan Company, * * * and if you find that the defendant made arrangements for, and procured the commission of, the acts recited in Instruction No. 1, with the intent to cheat and defraud, * * * then you are authorized to convict the defendant." As to the appellant's guilt, the offense was complete when he received and endorsed the check, State v. Clice, supra; annotation 141 A.L.R. 211, and it was not necessary for the jury to have found that he was personally present in the loan company office when the check was obtained as instruction two informed the jury, and there was an evidentiary basis for the instruction in this respect. There may have been no direct evidence of a conspiracy between the appellant and Miller, or Musgraves, and it is not necessary to say whether the circumstantial evidence supported a finding of conspiracy, State v. Whitledge, supra, the instruction involved here was not

upon that subject. State v. Farmer, Mo., 111 S.W.2d 76. The objection to the instruction is that there is no evidentiary basis for either the submission that he made arrangements for, or that he procured the commission of, the acts set forth in instruction one. In this connection, it is not necessary to again detail all the facts and circumstances connected with the transaction. The papers employed by Miller, exhibit A, the check and all other documents bore the appellant's signature, he had sold the automobile in November 1949 and, without further demonstration upon the facts, in this sense "made arrangements for," if he did not "procure the commission of," the acts recited in the indictment and in instruction one. In the absence of demonstration by the appellant, other than his mere assertion of the fact, that there is no evidentiary basis for instruction two, or that instruction four unduly emphasized specific evidence, it may not be said that either of these instructions was so prejudicially erroneous as to deprive the appellant of a fair trial.

■ The appellant did not testify and the witnesses who were called and testified on his behalf were Mrs. Miller, Leo's wife, and his father, W. P. Whitledge, Sr. Upon cross-examination the prosecuting attorney inquired of the witness, W. P. Whitledge, Sr., whether he had been convicted of a criminal offense. He did not respond to that question, and when asked whether he had been convicted of writing a check with intent to defraud, said, "Me?" Finally he said, "I don't remember. * * * Not that I know of." In rebuttal the state called as a witness the Magistrate of Cape Girardeau County who testified that "William Peyton Whitledge" had pleaded guilty to an information charging the offense of a fraudulent check and that he had been fined five dollars and the costs. Then there was a charge in 1947 of operating a motor vehicle without having first registered the vehicle with the Motor Vehicle Department. There was no objection to the rebuttal witness or to the evidence he gave but when the latter record was offered it was objected "that the party named in the information * * * is not the witness and that therefore any testimony as to a conviction of the party named in that information would be incompetent." The magistrate then said that the party named in the information "would have to be W. P. Sr. because W. P. Jr. was not in at that early a date," and, to that charge there was a fine of ten dollars and the costs. The witness, W. P. Whitledge, Sr., was recalled by the appellant and testified that his name was "William Pearl Whitledge," and that his son's name was "William Peyton Whitledge." It will be observed that there was no specific objection that the evidence of the magistrate referred to the appellant, and the claim that it did is only made to appear inferentially from the objection made by appellant's counsel and from the rebuttal testimony of the appellant's father. The magistrate testified that his records and convictions concerned the witness, W. P. Whitledge, Sr., and not the appellant, W. P. Whitledge, Jr. In these circumstances there is no foundation for the claim that the evidence of prior convictions for other, unrelated offenses referred to the appellant and were therefore prejudicial, as in State v. Leonard, Mo., 182 S.W.2d 548.

Questions not required to be presented and preserved in a motion for new trial have been examined, and the transcript shows complete compliance with respect to matters necessary to be considered by this court upon the record. State v. Hayzlett, Mo., 265 S.W.2d 321. Since no prejudicial error is found or demonstrated upon the transcript and record the judgment is affirmed.

WESTHUES and BOHLING, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

LEEDY, Acting P. J., and CONKLING and HOLLINGSWORTH, JJ., concur.