**STATE of Missouri, Respondent,**

v.

**Harold L. HOLLIDAY, Jr., Appellant.**

**No. WD 36518.**

Missouri Court of Appeals,
Western District.

Nov. 19, 1985.

Motion for Rehearing and/or Transfer
to Supreme Court Overruled and
Denied Dec. 24, 1985.

Application to Transfer Denied
Feb. 18, 1986.

Robert G. Duncan, Kansas City, for appellant.

Victorine R. Mahon, Jefferson City, for respondent.

Before CLARK, C.J., and TURNAGE and KENNEDY, JJ.

**PER CURIAM:**

Defendant appeals from a judgment of conviction of stealing by deceit, § 570.030, RSMo 1978, which followed a jury trial and a verdict of guilty. Punishment was as-sessed at a $5,000 fine and five years' probation.

The theory of the state was that defendant, an attorney, had collected the sum of $1,625 from the Leon M. Jordan Scholarship and Monument Fund, Inc., a not-for-profit corporation, for legal services which he had not performed, was not performing and had no intention to perform. The sum was paid by the corporation upon a statement upon defendant's letterhead, rendered by defendant to the corporation, in the following terms:

| | |
|---|---|
| Incorporation, by-laws, first trustee's minutes, 501(c)(3) [1] application, | $1,625.00 |
| James W. Tippin, tax consultant, | 525.00 |
| Reimbursement of filing fees, minute books and mail, | 55.50 |
| Total, | 2,205.50 |

Very truly yours,
Holliday & Holliday
Harold Holliday, Jr.

This statement, according to the state's theory, was a false and fraudulent statement which deceived the corporation.

Defendant was one of three trustees of the Jordan corporation, but the day-to-day affairs of the corporation were delegated to him. Defendant exercised unsupervised sole authority over its affairs. The corporation's headquarters was the Holliday & Holliday law office, from which its business was transacted and its files kept.

The Holliday & Holliday firm was a professional corporation of which defendant was the sole shareholder.

According to the testimony of James W. Tippin, another attorney, unconnected with the Holliday & Holliday firm, it was Tippin who had performed the services described as "incorporation, by-laws, first trustee's minutes, 501(c)(3) application" for which defendant had charged and collected $1,625 from the corporation. As to the sums of $525 and $55.50 respectively for "James W. Tippin, tax consultant" and "reimbursement of filing fees, minute books and mail", these sums had actually been paid out by defendant to Tippin and there is no contention that there was any deceit involved in those portions of his statement.

1. 26 U.S.C.A. § 501(c)(3) (West Supp.1984).

Tippin testified as follows: He had been consulted by defendant in May 1980 about doing the work in question. Defendant was a trustee of the Leon M. Jordan Scholarship Fund, which then existed as an unincorporated association. It was proposed to incorporate the same and to qualify it for tax exemption and to receive deductible contributions under the Internal Revenue Code. Defendant told Tippin "that fees would be available to pay for the services rendered". Tippin testified with reference to his fee arrangement: "I think I indicated to him that it really didn't make me any difference, that this would not be an item which I would bill him, or the Foundation".

When Tippin began work on the project it occurred to him that his daughter might be eligible for a scholarship from the Fund. If she should receive one, Tippin thought, the Internal Revenue Service might view its value as constituting income to Tippin, i.e., as compensation for services rendered to the Fund. He discussed this with defendant who advised him to "send in one of my statements for the worth of the services and he would pay me what he could on it". Defendant said, "I'll send you what I can."

Tippin sent to Holliday a statement, dated May 10, 1982, for $2,150 for his services, plus $55.50 for out-of-pocket expenses. The services portion of the statement included $650 for "Incorporation, by-laws, first trustee's minutes," and $1,500 for the "501(c)(3) application". (We note the similarity of language between Tippin's statement and defendant's statement to the corporation.) This, Tippin testified, was "within the range of normal fee for this type of work".

Tippin received two checks from defendant drawn on the Holliday & Holliday account. The checks were dated March 12, 1982. One was for $525 for "services regarding Jordan Fund". The other was for $55.50 for "reimbursement of expenses regarding Jordan Fund". (Actually Tippin had not yet completed the work billed for. The 501(c)(3) application was filed June 2, 1982. Additional work required by the Internal Revenue Service was performed after that date. The work was ultimately completed by Tippin, however, probably by October of 1982.)

On the same date as the Holliday checks to Tippin, March 12, 1982, defendant's statement for legal services and expenses was submitted to the Foundation and the corporation's check in payment thereof was delivered to defendant.

The defendant's statement for legal services and out-of-pocket expenses and the corporation check issued in payment of the same were explained by defendant's secretary. The statement and the check were prepared by her at defendant's direction. The check, drawn on the Jordan corporation account, was signed by defendant himself, whose sole signature was required on corporation checks.

It would appear from the above evidence, if believed by the jury, that defendant did indeed "appropriate ... by means of deceit" the sum of $1,625 from the Jordan corporation. The false representation was that the legal services had been done, were being done or would be done by defendant and that the corporation was indebted to him for them. The statement was false and defendant knew it was false. The essential elements of the crime of stealing, § 570.030, RSMo Supp.1981, are:

1. The appropriation; 2. of property; 3. belonging to another; 4. with the purpose to deprive; 5. accomplished without the consent of the other or by deceit or by coercion. *State v. Gates,* 637 S.W.2d 280, 282 (Mo.App.1982).

Defendant, however, in his sole point on appeal, says that the evidence failed to make a submissible case for stealing because of certain deficiencies in the evidence. We will take up his arguments one by one.

Defendant says first that the evidence is not "inconsistent with any reasonable theory of (defendant's) innocence", adverting to the rule prevailing in circumstantial evidence cases, *State v. Bunton,* 453 S.W.2d 949, 952 (Mo.1970), and that the guilty verdict is therefore not supported by the evidence. The "reasonable hypothesis of innocence" which he puts forward is that

defendant simply subcontracted the legal work to Tippin. Defendant charged the corporation the fair value of the services, he argues, which he was able to subcontract out to Tippin for a lesser sum.

Aside from the fact this is not a true circumstantial evidence case,[2] the jury's rejection of defendant's hypothesis was entirely reasonable. Tippin's testimony was that he had himself rendered his statement for the full value of the services, but that he had accepted the sum of $580.50 as being all the corporation could afford to pay. He had no intention of attempting to collect the rest. It is plainly inferable from his testimony that he contemplated forgiving the balance for the benefit of the corporation. Defendant himself, by itemizing the amount of $580.50 paid to Tippin and claiming reimbursement therefor, treated the Tippin services as having been performed for the corporation rather than as having been performed as a subcontractor for defendant.

Next defendant says the Jordan corporation suffered no loss in that it owed the sum of $2,205.50 represented by defendant's statement. It received a quid pro quo for its money in the form of legal services. The fact is, however, the Tippin claim for services was forgiven by Tippin—at least, conditionally so—to the corporation. The claim was by no means assigned to defendant, and he makes no such contention. Presumably, if Tippin elected to do so, he could still collect the remainder of his bill from the corporation; payment to defendant did not discharge it. Defendant's argument that the corporation lost nothing by defendant's deceit is cavil.

Finally defendant says that the corporation did not *rely* upon his statement for services. Defendant as agent for the corporation knew that his statement was false (as the argument goes), and his knowledge would be imputed to the corporation. How could the corporation then rely upon the truth of the statement, knowing it to be false, and be deceived thereby? Defendant

cites *City of Kansas City v. Fritz*, 607 S.W.2d 837 (Mo.App.1980), where an agent of a store saw defendant go into the drapery department and pick up a package of curtains, which he then turned in for a refund as if he had purchased it and was returning it. It was held that he was not guilty of stealing the funds paid to him by the store, because the store had not relied on his deception in parting with the money. That case is not applicable here, where the defendant is not dealing with the alleged victim at arm's length. Here the defendant was in a position of trust and confidence with the corporation, and his knowledge of his own misrepresentation is not imputed to the corporation. *State v. Pierce*, 320 Mo. 209, 7 S.W.2d 269, 271–72 (1928); *People v. Parker*, 235 Cal.App.2d 86, 44 Cal.Rptr. 900 (1965); *State v. McCutchan*, 219 Iowa 1029, 259 N.W. 23 (1935); 35 C.J.S. *False Pretenses* § 22 (1960).

The evidence was sufficient in every respect to support the conviction.

The judgment is affirmed.

---

**2.** A true circumstantial evidence case rests wholly upon circumstantial evidence. The present case is based largely upon direct evidence. *State v. Ritterbach*, 637 S.W.2d 820, 822–23 (Mo.App.1982); *State v. Holman*, 556 S.W.2d 499, 508 (Mo.App.1977).