## THE STATE v. CAREY STEELE, Appellant.

Division Two, December 4, 1919.

1. **REPUTATION:** Cross-Examination of Witness: Defendant a Drunkard. Where a witness for defendant on direct examination was permitted to testify that the reputation of defendant for morality, peace, quietude, truthfulness and general standing in the community was good, it was not error to permit the State's attorney on cross-examination to ask the witness if defendant had not at one time been a drunkard and had taken the whiskey cure, nor was an affirmative answer to the inquiry prejudicial.

2. **CONTINUANCE:** Absent Witness: To Disprove Immaterial Issue. It is not essential to a conviction of the crime of abortion that the pregnancy of the woman be established. Therefore, where the second count of the information charged pregnancy of the prosecutrix, but the jury acquitted defendant under that count, but found him guilty upon the first count, which did not charge pregnancy, it was not error to deny his application for a continuance based on the absence of a physician who if present would testify that prosecutrix did not pass a foetus the day after the operation was performed by another physician, as claimed by her, but that he made an examination of the alleged foetus and found it to be merely a blood clot, superinduced by cold and delayed menstruation, and that he so informed her. Such testimony would merely

have been corroborative of the fact which the jury by their verdict found.

3. **FAILURE TO INSTRUCT:** No Assignment in Motion. An assignment on appeal that the court erred in failing to instruct that evidence of another offense committed by defendant in the abortion case, namely, the procuring by him of medicines from other physicians for the use of prosecutrix, should be considered only as bearing on the question of intent, cannot be considered, if the failure to so instruct is in no manner assigned as a ground of error in the motion for a new trial and is in nowise preserved in the bill of exceptions.

4. **ARGUMENT TO JURY:** Failure of Defendant to Testify. A statement by the attorney for the State in his argument to the jury in a prosecution for abortion that "every fact and circumstance stand absolutely uncontradicted; the only means by which they endeavor to indirectly contradict the fact of this charge is to bring witnesses in here to lie and vilify the character of this girl; that is not bringing testimony here which says there was no trip to Mexico, there wasn't intercourse, there wasn't any use of instruments," is not such a comment on the failure of defendant to testify as would warrant a reversal.

Appeal from Audrain Circuit Court.—*Hon. Ernest S. Gantt,* Judge.

AFFIRMED.

*Frank J. Duvall, Clarence A. Barnes* and *Hostetter & Haley* for appellant.

(1) The improper conduct of counsel for the State has met fearless and just disapproval in the appellate court. State v. Webb, 254 Mo. 434; State v. Spivey, 191 Mo. 112. The prosecuting attorney should not express his belief in the defendant's guilt. State v. Hess, 240 Mo. 160; State v. Webb, 254 Mo. 434; State v. Spiveg, 191 Mo. 112. The prosecuting attorney should not express his belief in the defendant's guilt. State v. Hess, 240 Mo. 160; State v. Webb, 254 Mo. 414; State v. Helton, 255 Mo. 182; State v. Phillips, 233 Mo. 299. (2) The action of the counsel for the State in proving over the objection of the defendant, but with the sanction of the court, that defendant had at

one time been a drunkard and had taken the whisky cure, is sufficient in and of itself, absent all other errors, to reverse the judgment. It is well settled law that the character of the defendant on trial cannot be assailed by the State by proof of specific acts of wrongdoing or of delinquency. State v. McDonough, 232 Mo. 235; State v. Teeter, 239 Mo. 485. (3) The continuance of the case on the ground that Dr. E. M. Bartlett was an important witness, should have been granted. While it is in a measure discretionary with the trial court as to granting continuances, yet the policy of the law is to give a defendant a "square deal." Cases of conviction have been reversed by this court because accused was not granted a chance to get his important witnesses present and in court. State v. Sherrell, 198 S. W. 464; State v. Flick, 267 Mo. 34. (4) The evidence that defendant had procured medicines and consulted other doctors in Clarksville for the prosecuting witness was not proof that he was guilty of the offense charged in the indictment and the jury should have been told by instruction that such evidence of other offenses should be considered by them as bearing only on the question of intent and motive. State v. Hyde, 234 Mo. 224. If the character of a crime is such as to show on its face the intent, then evidence of other crimes is admissible. State v. Bersch, 207 S. W. 814.

*Frank W. McAllister*, Attorney-General, *S. E. Skelley* and *Henry B. Hunt*, Assistant Attorneys-General, for respondent.

(1) The question of continuance is largely within the discretion of the trial court, and that court's action will not be interferred with unless it appears that there has been an abuse of discretion. State v. Cain, 247 Mo. 705; State v. Cochran, 147 Mo. 516; Poplar Bluff v. Meadows, 187 Mo. App. 456. Diligence must be shown in trying to obtain the presence of a witness. Sec. 5204, R. S. 1909; State v. Kindred, 148 Mo. 281; State v. McKenzie, 228 Mo. 397; State v. Pagels, 92 Mo.

308. (2) The evidence of the State tending to show that appellant consulted physicians in Clarksville, was not evidence of other crimes. This evidence tended to disclose the relations of prosecutrix and appellant which thereafter culminated in appellant procuring Dr. Hawkins to perform the operation. 1 Cyc. 186 (5); 1 C. J. 329 (97) d; 1 R. C. L. p. 82, sec. 19. (3) Having enjoyed permission to successfully ask wholly incompetent and improper questions on a certain subject, it does not lie in the mouth of the appellant to complain of error in permitting the State to pursue a similar course. State v. Grubb, 201 Mo. 610; State v. Palmer, 161 Mo. 175; State v. Hamey, 168 Mo. 197; State v. Hutchinson, 186 S. W. 1001. (4) The specific trait of character of appellant involved in this case, was his character for morality. The court permitted appellant's witness, Berkeley Wells, to testify over the State's objection that the reputation of appellant for "morality, peace, quietude, truthfulness and general standing in the community," was good. State v. Anslinger, 171 Mo. 608. (5) Mr. Buffington did not comment upon the failure of the appellant to testify. B. of Ex., 353, 354; State v. Preston, 77 Mo. 296; State v. Hughes, 258 Mo. 271; State v. Gordon, 253 Mo. 518; State v. Faught, 140 Mo. App. 373. (6) The prosecuting attorney had a right to tell the jury, as a matter of argument, that the "circumstances in this case speak for themselves and alone are sufficient to be damaging and damning against the defendant." State v. Rogers, 253 Mo. 415; State v. Stark, 72 Mo. 39; State v. Gartrell, 171 Mo. 512; State v. Mallon, 75 Mo. 357.

WILLIAMS, P. J.—Upon an information charging him with the crime of "felony of abortion," defendant was tried in the Circuit Court of Audrain County, found guilty, and his punishment assessed at one year in jail and a fine of one thousand dollars. Defendant has duly perfected an appeal.

Upon the part of the State the evidence tends to establish the following facts:

The crime occurred about the fifteenth of February, 1917, in Mexico, Missouri, At this time and for some six months prior thereto the defendant and prosecutrix resided as neighbors in Clarksville, Pike County, Missouri. Defendant, who was then over thirty years of age, resided with his mother, and the prosecutrix, who was then about nineteen years of age, resided with her mother. Prosecutrix was a student in the Clarksville high school, and defendant was interested more or less in farming. The two families were quite friendly. Defendant and prosecutrix were in each others company frequently, became engaged to be married and from about the middle of December, 1916, until the middle of the following February, frequently indulged in acts of sexual intercourse. Most of the acts of sexual intercourse occurred at the barn on the rear of the lot where defendant lived.

In January, 1917, prosecutrix missed her monthly period of illness. She communicated this fact to defendant. He told her that he thought it was due to the fact that she had had a cold and that he thought she would be alright in a short time. One week went by with no change in the condition, and appellant procured some medicine from a local physician. This medicine failed to produce any results. More medicine was procured from the local doctor, but without results. Several days afterwards appellant procured medicine from a physician in Louisiana, Missouri, but this likewise failed to bring about the menstruation.

Defendant then requested prosecutrix to tell her mother about her condition, stating to her that if her mother would consent a local physician would perform an operation upon her. Prosecutrix, however, did not tell her mother at that time. Later appellant informed prosecutrix that a local physician wanted to see her mother and requested her mother to come to his office that afternoon. The prosecutrix's mother went to see

the doctor and refused to give her consent to an operation, and thereupon the doctor refused to perform the operation.

The mother of the prosecutrix requested defendant to marry prosecutrix, but defendant told her that he could not, because he did not want to lose his own mother.

Defendant stated that he would go to Louisana the next day and find a doctor who would perform the operation. A day or so later defendant told prosecutrix that he had found a doctor at Louisiana who would perform the operation. Defendant gave prosecutrix twenty-three cents for railroad fare to Louisiana, and the next morning defendant and prosecutrix boarded a train for Louisiana, but the defendant, stating that he did not wish to be seen with prosecutrix, rode in a different coach. Upon arriving in Louisiana defendant gave prosecutrix fifty cents with which to buy her dinner, and then informed her for the first time that he was going to take her to Mexico for an operation.

Later that day they went by railroad to Mexico. Upon arriving there defendant went out to inquire the way to Doctor Hawkins' office, and shortly thereafter came back to the depot and accompanied prosecutrix to the office of Doctor Hawkins, a duly registered physician.

When they arrived at the doctor's office he was alone. Defendant said to the doctor, "Here is the little girl, Doctor; she is a mighty fine little girl." The doctor replied saying, "I would think that if you had not told me; I think well of all the girls." After getting warm prosecutrix went into the back room of the doctor's office. Defendant at the request of prosecutrix remained in the front office.

In the private room the doctor placed the prosecutrix in an operating chair. Prosecutrix told the doctor that she was two months advanced in pregnancy. The doctor by means of instruments performed an operation upon her for the purpose of producing an abortion.

Defendant paid the doctor twenty-five dollars for performing the operation. Prosecutrix became nervous and sick at her stomach, and rested upon a bed in the doctor's office until train time.

On the train going to Louisiana that evening prosecutrix became quite sick and had to be helped from the train at Louisiana. There she lay on the floor of the depot while defendant went to get an automobile to take them to Clarksville. They arrived at Clarksville about ten o'clock that night.

The next morning prosecutrix, according to the doctor's directions, removed the packing from her sexual organs. About nine o'clock that morning a foetus passed from her. The next morning prosecutrix suffered severe cramping spells and a local physician was called to give her some medicine. This local physician was shown the foetus and said, "Well, that's it alright."

Prosecutrix was in good health when she went to the doctor's office in Mexico, and she had not been advised by any physician that it was necessary to her health or the health of an unborn child that she have the operation performed. The trip to Mexico was made on Thursday and prosecutrix testifies that on the following Wednesday she was back in school.

The evidence upon the part of the defendant tended to prove the following facts:

The prosecutrix returned to school the Tuesday following the operation and remained at school the balance of the week. Defendant offered evidence tending to show that the reputation of defendant for "peace, quietude, truth and morality in general standing in the neighborhood was good," and that the reputation of the prosecutrix for "virtue, chastity, morality and veracity" was bad, and that the reputation of the prosecutrix's mother along the lines above mentioned was not very good.

I. It is contended by appellant that the court erred in permitting the State to prove that defendant had at one time been a drunkard and had taken the

whiskey cure. It will be necessary to explain how this question arises upon the record in order to fully understand its significance.

**Reputation.**

Upon the trial the appellant produced as a witness Berkely Wells, who, over the State's objection, was permitted to testify as to the reputation of the appellant "for morality, peace, quietude, truthfulness and general standing in the community." The witness upon his direct examination testified that appellant's reputation in the above behalf was good. Thereupon the State's attorney, in cross-examining witness Wells, asked the witness if he hadn't heard that the appellant used to be a drunkard and at one time had taken the whiskey cure. The witness answered in the affirmative.

The above mentioned cross-examination of defendant's character witness was entirely permissable as a proper inquiry into the source and the kind of information which the witness had on the subject about which he had testified in his direct examination. [State v. Crow, 107 Mo. 341, l. c. 345, et seq.; State v. Thornhill, 174 Mo. 364, l. c. 370; State v. Brown, 181 Mo. 192, l. c. 213.] We therefore rule the above point against appellant's contention.

II. It is further contended that the court erred in overruling appellant's application for a continuance.

Appellant asked for a continuance on the ground that Dr. E. M. Bartlett, an important witness, was in the military service of the United States and was unable to be present to testify upon the trial. The application stated that if present this witness would testify in substance that the prosecutrix did not pass a foetus as claimed by her the day after the operation was performed upon her but that he made an examination of the alleged foetus at the request of the mother of prosecutrix and found it to be merely a blood clot, superinduced by a cold and delayed menstruation, and that he so informed prosecutrix and her mother.

**Continuance.**

It was not essential to a conviction in this case that the pregnancy of prosecutrix be established. [See Sec. 4458, R. S. 1909.]

The first count of the information did not charge that the prosecutrix was pregnant. The second count of the information did charge the pregnancy of the prosecutrix. But the jury acquitted appellant under the second count and found him guilty under the first count. It is therefore evident that the jury found that the prosecutrix was not pregnant. This being true it is difficult to see how appellant could have been injured by the absence of this witness whose testimony would merely corroborate the finding which the jury in fact made in the case.

Aside then from the question of the lack of diligence shown by defendant in procuring the testimony of this witness in deposition form before he was inducted into the army, which in and of itself may have justified the ruling below (a point not necessary here to determine), we are of the opinion that the action of the court in overruling the application for a continuance did not in any manner result in injury to the appellant.

III. Appellant's next contention, as we understand it, is that the court erred in failing to instruct the jury that evidence as to the other offense (viz.: the procuring by appellant of medicine from other physicians for the use of prosecutrix) should be considered by them as bearing only on the question of intent.

**Failure to Instruct.**

Concerning this point it is sufficient to say that the failure to give such an instruction is in no manner assigned as ground of error in the motion for a new trial. Nor is the point in any manner preserved in the bill of exceptions. Under such circumstances the point is not saved for appellate review. [State v. Wansong, 271 Mo. 50, l. c. 58, and cases therein cited.]

IV. During the argument before the jury the attorney for the State said:

"Why gentlemen of the jury, every fact and circumstance stands absolutely uncontradicted. The only

means by which they endeavor to indirectly contradict the fact of this charge is to bring witnesses in here to lie and vilify the character of this girl. That is not bringing testimony here which says there was no trip to Mexico, there wasn't intercourse, there wasn't any use of instruments.''

Appellant contends that the foregoing statement was a comment on the failure of the appellant to testify in the case, and for that reason the judgment should be reversed.

We are unable to agree with this contention. Only by a strained construction could it be said that this language referred to appellant's failure to take the stand. Very similar statements have been before this court and have been held not to be subject to the objection now made. [State v. Hughes, 258 Mo. 264, l. c. 271; State v. Gordon, 253 Mo. 510, l. c. 518.]

Further complaints are made concerning the arguments and conduct of the prosecuting attorney. We have carefully examined all of the voluminous matter of which complaint is made but find no matter in that regard which would justify a reversal of the judgment.

The judgment is affirmed. All concur.