[Crim. No. 13253. Second Dist., Div. Four. Dec. 13, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. DOROTHY ANN SHANNON, Defendant and Appellant.

Sarnoff & Lieberman, Laurence M. Sarnoff and Cornell Ridley for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Brian Amer, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Dorothy Ann Shannon and Patricia Ann Nelson were accused by information of grand theft (Pen. Code, § 487). Shannon pled not guilty; a motion under Penal Code, section 995 was argued and denied. Trial by jury was waived and the cause was submitted on the testimony of the preliminary hearing. Shannon was found guilty; a motion for new trial was made and denied; proceedings were suspended and probation granted for three years with 180 days to be served in the county jail.

The evidence for the prosecution was as follows: While Mrs. Wright was in the vicinity of Gardena Boulevard, defendant approached and asked Mrs. Wright where the social security office was located. Defendant said she lost her husband in Vietnam, that she had received $9,000 as partial settlement from the government and that she wanted to put the money in a safety deposit box but that she would need a social security number. Mrs. Wright suggested that the money be put in a savings and loan institution where interest could be drawn. Codefendant Nelson approached, carrying a number 10 size manila envelope tied with a tape, saying that she found the envelope in a phone booth and didn't know what to do with it. Mrs. Wright suggested turning it over to the police. Codefendant Nelson left saying that she was going to see "Louie," an attorney for whom she worked, to ask what should be done. After five minutes, Nelson returned saying the envelope contained "bookie money" and that "Louie" advised putting it in a safety deposit box until an investigation could be made. Nelson told Mrs. Wright that "Louie" wanted to be sure that all persons could maintain themselves without resort to the bookie money. Defendant offered an envelope supposedly containing $4,000. Nelson left with the envelope, came back, and said "Louie is satisfied" and returned the $4,000. Mrs. Wright was asked to put up money. Mrs. Wright wrote a check for $400 at the bank and gave the money to Nelson, along with a square watch and a 75-year-old diamond ring. Nelson took the watch and money to "show it to Louie." Later Mrs. Wright walked to where Louie was supposed to have an office and there was only a blank wall.

When Mrs. Wright looked back defendant and Nelson were gone.

Mrs. Wright filed a report within 25 minutes. Mrs. Wright described defendant as having black or dark brown hair, tied straight back; she had no makeup, and her lips were pallid; she was very light and as tall as Mrs. Wright, who is 5 feet tall. She wore dark clothes of an ordinary nature, a dark blue or black coat, which was not quite as long as her skirt, which was short.

Mrs. Wright had been face-to-face with defendant in earnest conversation for at least one-half hour. The distance was not more than 10 inches between them.

The following day Deputy Kipley stopped a vehicle, driven by defendant for a traffic violation. Patricia Nelson was a passenger. Defendant gave the officer her driver's license. The officer, who had received training in narcotics law enforcement, noticed puncture wounds which appeared to be needle marks of an illegal injection on Nelson's hand. Nelson was arrested and a watch and diamond ring were taken from her at the time of booking. Defendant had a second driver's license; she was asked to accompany the officer to the station where a record check was made, and defendant was then permitted to leave.

Several officers went to defendant's apartment with a warrant for her arrest. Defendant was not at her apartment. Without a search warrant, photographs of defendant were removed from defendant's apartment and were later shown to Mrs. Wright.

The trial court ruled that all of the physical evidence, except for a check cashed by Mrs Wright, was erroneously admitted at the preliminary hearing; consequently that evidence was excluded from consideration on the trial.

Clearly the evidence was sufficient to support the finding of guilt. However, Mrs Wright's in-court identification of defendant as one of the participants in the transaction was, obviously, vital to the prosecution's case. On this appeal defendant urges, as her sole ground for reversal, that the in-court identification was a "fruit of a poisonous tree," tainted by the fact that it was illegally secured and, therefore, inadmissible. It is not here contended that this contention was not adequately raised in the trial court.

The alleged illegality is presented to us in a two-fold manner. It is first urged that the arrest of defendant and Nelson, by Deputy Kipley, was illegal as not being made on probable

cause, and that, apart from the information (including the watch and ring) thereby secured, no suspicion would have been directed toward defendant. The second stage of the contention is the claim that the search of defendant's apartment was illegal, hence that the photographs thus secured were illegally obtained, and that the use of these photographs in securing Mrs. Wright's out-of-court identification of defendant so tainted her later in-court identification as to make that testimony inadmissible.

I

On this record, we hold that the contention is untenable insofar as it is based on the allegedly illegal search of the apartment and the use, in Mrs. Wright's out-of-court identification, of the photographs thereby secured.

The issue was, as we have said, raised and extensively argued in the trial court. That court, after the argument, and being advised of Mrs. Wright's in-court testimony on the identification issue, made a specific finding that "the pictures didn't enter into it at all," and, in more detail:"The fact that those pictures were shown to the victim should not preclude her from giving her testimony as to who the defendants were, and as she points out she was with her for half an hour within 12 or 14 inches from her face, and she shouldn't be precluded from identifying her because some illegally obtained pictures were shown to her."

The case at bench is, thus, substantially the same as *People* v. *Stoner* (1967) 65 Cal.2d 595 [55 Cal.Rptr. 897, 422 P.2d 585]. It is true that the trial court here did not conduct as full, or as formal, a "hearing" on the issue of the effect of the illegally obtained pictures on Mrs. Wright's identification as did the trial court in *Stoner*. But it did have her testimony before it, it did consider and formally rule on the issue. We think that the proceeding as conducted adequately met any requirement that might be deduced from *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], or from *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951].

II

We conclude, also, that the contention is invalid insofar as it is based on the illegal arrest of Nelson.

It is clear that that arrest was unlawful, as the trial court held. Although puncture wounds have often been considered in determining probable cause for arrest, we have found no

case in which probable cause was found where there were puncture marks alone. In cases where probable cause was upheld on appeal there were additional factors such as past acquaintance, pinpointed eyes or suspicious behavior. (See, for example, *People* v. *Rogers* (1962) 207 Cal.App.2d 261 [24 Cal.Rptr. 341] ; and *People* v. *Hernandez* (1962) 206 Cal.App. 2d 253 [23 Cal.Rptr. 488].) The arrest here had no greater foundation than that which we held to be unlawful in *People* v. *Ferguson* (1963) 214 Cal.App.2d 772 [29 Cal.Rptr. 691].

However, defendant was not arrested at that time. She was arrested at a later date, pursuant to a warrant of arrest, the validity of which was not challenged in the trial court nor here. Neither the warrant, nor the proceedings which led up to its issuance were before the trial court, nor are they before us. We cannot speculate as to their contents. Once defendant was arrested—validly as defendant admits—the police could lawfully present her to Mrs. Wright for identification. Whatever clues may have led the police to defendant, they are not shown, on this record, to have had any effect on the identification. The case was tried long before the decision in *United States* v. *Wade, supra* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], so that the requirements as to lineups, first laid down therein, do not here apply. (*Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967].) But even if the *Wade* rule were retroactively applicable, it would not apply to this case. In *Wade,* the in-court identification was potentially the direct product of the illegal lineup. But here the in-court identification, as we have said, was the product of a legal arrest. As such, it was not the fruit of any poisoned tree, but the fruit of a different tree, not herein shown to be poisoned.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 8, 1968.