STATE of Missouri, Respondent,

v.

Roscoe THOMAS, Appellant.
No. 57254.

Supreme Court of Missouri,
Division No. 2.

Feb. 12, 1973.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Assist. Atty. Gen., Jefferson City, for respondent.

James L. McMullin, Hill & McMullin, Kansas City, for appellant.

HOUSER, Commissioner.

Roscoe Thomas, convicted of robbery in the first degree and sentenced to 15 years' imprisonment, appeals on these grounds: that the court erred in overruling his motion to suppress "all evidence obtained by the police department following appellant's arrest"; that the arrest was without probable cause and therefore the identification of appellant at a lineup and "all the evidence that appellant had committed the robbery was the fruit of the arrest and should have been suppressed." We have jurisdiction, the notice of appeal having been filed prior to January 1, 1972. Constitution of Missouri, Art. V, § 31, V.A.M.S.

The State introduced evidence that appellant and another robbed a pharmacy at gun point on March 29. The pharmacist, James Neal, his employee, Sarah Harris, and a Dr. Jones witnessed the robbery. Neal had seen appellant in the pharmacy prior to that time. The victims gave the police the following description of appellant: a brown-skinned negro male 30–35 years old, between 5 feet 8 and 9 inches in height, medium build, with a scar on his face, wearing a moustache and round-trimmed beard, with long hair, wearing a plaid shirt. Appellant used a revolver; his companion carried a shotgun. All three witnesses made in-court identifications of appellant as one of the robbers. In addition, each of the three testified without objection to the identification of appellant as one of the robbers at a lineup conducted at a police station several days after the robbery.

Appellant was arrested 15 minutes after midnight April 8 for a homicide which occurred at 8 or 8:30 p. m. April 7. Police were informed that at the time and place of the homicide a green Ford automobile was seen. The police placed under surveillance a 1971 green Galaxie Ford automobile parked in front of its owner's house at 1310 Michigan, with orders to arrest anyone who entered the Ford. After the Ford had been under surveillance for several hours a radio dispatch indicated that someone was entering the Ford. Two officers stationed in the vicinity heard the broadcast, saw a man enter and the lights go on and observed the Ford start down the street. The officers stopped the automobile. One of them yelled at the driver, this appellant, who got out of the car with his hands up. The officers walked over to appellant, placed him under arrest for homicide, "turned him around to the Ford," and searched him. As Officer King approached the car he looked in the front seat and saw there a sawed-off shotgun and a .45 automatic pistol. The officers did not have an arrest warrant or search warrant. Taken to the police station appellant was booked but never charged with homicide. He was held there in connection

with the homicide "until the next afternoon sometime." It is not clear from the transcript whether appellant was released on the afternoon of April 8 and brought back on April 9 for the lineup in connection with the robbery, or detained overnight at the police station for that purpose. In any event the lineup at which James Neal, Dr. Jones and Mrs. Harris identified appellant was conducted on April 9. It is a fair inference from the record that a lineup was arranged and the victims of the robbery called to view a lineup for the reason that appellant fit the description of one of the robbers given to the police.

■■■ Appellant asserts and argues that his arrest for homicide was without probable cause and therefore all evidence obtained following this unconstitutional infringement of appellant's rights should have been suppressed. This is not necessarily so. See Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L. Ed. 319, 24 A.L.R. 1426; Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, and Wong Sun v. United States, 371 U.S. 471, 487–488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, which circumscribe the rule of exclusion of evidence traceable to illegal police activity. People v. Walker, 27 Mich.App. 609, 183 N.W.2d 871, 874. From these United States Supreme Court decisions it is clear that the doctrine of the fruit of the poisonous tree is inapplicable if the evidence emanated from an independent source, or the causal connection between the primary illegality and the prosecution's proof becomes "so attenuated as to dissipate the taint"; that it is not enough that the evidence "would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " Terry v. Ohio, 392 U.S. 1, 13, 14, 15, 88 S.Ct. 1868, 1875–1876, 20 L.Ed.2d 889, points out that courts must be constantly aware of the limitations on the application of the doctrine; that a "rigid and unthinking application of the exclusionary rule * * * may exact a high toll in human injury and frustration of efforts to prevent crime."

Therefore, assuming that the officers did not have probable cause to arrest appellant for homicide,[1] the question is whether the lineup identification emanated from a source independent of the arrest; whether the connection between the arrest and the lineup identification was so attenuated as to dissipate the taint; whether the lineup identification resulted from the exploitation of the arrest or by means sufficiently distinguishable to be purged of the primary taint. Our conclusion is that all of these questions must be answered in the affirmative; that there was probable cause to detain appellant for commission of the robbery regardless of the propriety of detaining him on the basis of the homicide for which he was arrested. The lineup itself involved no violation of constitutional right.[2] The lineup identification followed the arrest in point of time but was more causally connected with the prior identification by the victims of the robbery than with the arrest. Paraphrasing LeBlanc v. United States, 1 Cir., 391 F.2d 916, 917 [1],

1. The nexus between homicide, green automobile and appellant is nebulous at best. See United States v. Collins, D.C.Cir., (1971) 439 F.2d 610, 614–615 [3].

2. The Public Defender, who represented appellant, was present at the lineup and participated in its composition. When appellant's counsel objected that two or three men initially selected by the police to appear in the lineup with appellant were dissimilar in appearance from appellant (they were clean-shaven) they were excused and, according to Officer Luther, appellant's counsel went back in the jail area and looked around and picked out, to his opinion, those that closest resembled the defendant himself."

it could hardly be suggested that the police anticipated that their arrest of appellant for homicide would be used to speed investigation of the entirely different crime of robbery of the pharmacy. The lineup identification did not result from the "exploitation" of the arrest but by means sufficiently distinguishable to be purged of the primary taint. The lineup identification emanated from a source independent of the arrest: there was independent probable cause to hold appellant on the robbery charge.[3] Appellant's physical appearance, which fitted the description given the police by the victims of the robbery, and the weapons found in his possession when arrested[4] which fitted the description of the weapons used by the robbers, justified the detention of appellant on the robbery charge and the holding of a lineup for the purpose of having the witnesses to the robbery view appellant for possible identification. See Young v. United States, (1970) 140 U.S.App.D.C. 333, 435 F.2d 405, in which the court, after stating that detention beyond the limits of Rule 5(a) of the Federal Rules of Criminal Procedure is the equivalent of a new arrest which could be supported only on a showing of probable cause, said, l. c. 410 [5]: "In the case at bar, however, the evidence of record establishes probable cause to detain appellants for the Mathews Drugstore robbery, over and above the Firearms Act violation for which they were arrested.

"Officer Kerick's determination that appellants fitted the lookout for the Mathews Drugstore robbery justified not only continuance of detention on the basis of that offense, but also the holding of a lineup for viewing by witnesses to that robbery * * *."

Judgment affirmed.

3. Absent such probable cause there would have been no authority to hold appellant on the robbery charge. United States v. Meachum, D.C.D.C., 197 F.Supp. 803, 805.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.

4. Found not as the result of a search, but in plain view on the front seat of the Ford.