STATE of Missouri, Plaintiff-Respondent,

v.

Thomas LYNCH, Defendant-Appellant.

No. 36106.

Missouri Court of Appeals,
St. Louis District,
Division 3.

July 15, 1975.

Motion for Rehearing or Transfer
Denied Sept. 8, 1975.

Application to Transfer Denied
Nov. 10, 1975.

---

Legal Aid Society, Charles W. Bobinette, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Preston Dean, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

McMILLIAN, Judge.

A circuit court jury found defendant guilty of robbery in the first degree by means of a dangerous and deadly weapon, §§ 560.120 and 560.135, RSMo 1969. Pursuant to the Second Offender Act, § 556.-280(1), the court sentenced defendant to serve (20) twenty years in the custody of the Missouri Department of Corrections. Defendant appeals.

On this appeal defendant raises five points for reversal: (1) denial of a continuance; (2) undue limitation of his right of cross-examination; (3) two instances of a refusal to suppress identification testimony of witnesses; and (4) refusal of certain cautionary instructions. For reasons hereafter set out, we affirm.

Since defendant does not question the sufficiency of the evidence, we will set forth only those facts necessary for a disposition of defendant's points on this appeal.

On 17 October 1975, at or near noon, four men of various sizes and descriptions, committed an armed robbery of the Vogue Sales Shop located on Manchester Avenue in the City of St. Louis. At the time the four men entered the store, Mrs. Garon Daugherty, a co-owner, was there alone with her three-year old son. During the robbery which lasted from twenty to twenty-five minutes, Linda Cope, a neighbor, and Al Breckley, a private watchman, entered the store.

Mrs. Daugherty testified that the store was well-lighted; that she got a good look at the subjects; and that she knew one of the subjects, later identified as William Walker, from prior business dealings. At the time she gave her description of the four subjects to the police, she did not give Walker's name, but one of the police volunteered Walker's name when he heard her description.

About four months later, Mrs. Daugherty picked defendant from a lineup and positively identified him. On trial she gave both a pre-trial and in-court identification.

Prior to the beginning of the trial, defendant's attorney filed a verified motion for a continuance, Rule 25.08, V.A.M.R. The thrust of the motion was to gain additional time to discover and subpoena the federal agents involved in an investigation, arrest, and prosecution of Mrs. Daugherty, who, the motion alleged, had been arraigned in the Federal Court on a stolen gun charge. Defendant alleged that these agents, if present, would testify to Mrs. Daugherty's bad reputation in the community for honesty.

■ Defendant concedes that the granting of a continuance is within the sound discretion of the trial court. *State v. Reece,* 505 S.W.2d 50, 52 (Mo.1974); Rule 25.08. But he asserts that here the trial court had abused its discretion because the denial of a

continuance precluded him from introducing independent evidence showing that the general reputation of Mrs. Daugherty for veracity was bad. In *State v. Cuckovich*, 485 S.W.2d 16, 21–22 (Mo. banc 1972), our Supreme Court noted that it requires a very strong showing to induce an appellate court to interfere with the exercise of a trial court's discretion in acting on motions for a continuance. It further observed that the action of the trial court would not be disturbed unless a clear abuse of discretion is shown. *State v. Tettamble*, 517 S.W.2d 732, 734 (Mo.App.1974).

■ In *State v. Collie*, 503 S.W.2d 445, 446–47 (Mo.App.1973), we said that when a continuance is sought on the ground of the absence of a witness, the request must give the name of the witness, where he resides, the probability of procuring his testimony and within what time, what facts the witness will prove, and the exercise of due diligence. The application filed herein fails to list the names of the witnesses sought or their addresses and fails to state the probability of securing their testimony, much less within what time.

■ Under the circumstances herein, we find no abuse of discretion because (1) no showing has been made that a different result would have been obtained had the absent witnesses testified, and (2) the purported testimony had no direct bearing upon the issue of guilt or innocence. *State v. Reece*, supra; *State v. Steele*, 280 Mo. 63, 217 S.W. 80 (1919).

On cross-examination, defendant's counsel inquired of Mrs. Daugherty whether she had ever knowingly purchased stolen guns or sold stolen guns to a known felon. Defendant claimed that the purpose of the questions was to show bias, to impeach her. The State's objections to the questions and the offer of proof were sustained.

The defendant points out, and rightfully so, that his questions made no reference to either an arrest or a present indictment. He argues that while he could not ask a witness whether or not he has ever been arrested for or charged with a crime, yet he may ask a witness questions concerning whether or not he committed or admitted committing a specific crime. *State v. Foster*, 349 S.W.2d 922 (Mo.1961); *State v. Williams*, 492 S.W.2d 1 (Mo.App.1973); and *State v. Summers*, 506 S.W.2d 67, 73 (Mo. App.1974).

■ In the *Williams* case, we covered this issue somewhat exhaustively in a review of the cases. We concluded that subject to a witness's claim of right against self-incrimination a witness may be asked questions concerning whether he committed or admitted committing a specific criminal act. The purpose of such questions is to test a witness's credibility, however irrelevant the acts may be to the facts in issue and however disgraceful the answers may be to the witness. *State v. Long*, 201 Mo. 664, 100 S.W. 587, 590 (1907).

To counter defendant's contention, while recognizing the validity of his arguments for the general rule, the state urges that the allowance or disallowance of this type of questioning is discretionary with the trial court. *State v. Long*, supra, and *Wendling v. Bowden*, 252 Mo. 647, 161 S.W. 774 (Mo. 1913). The court in the *Wendling* case, supra, citing *Muller v. St. Louis Hospital Ass'n*, 5 Mo.App. 390, 401, affirmed in 73 Mo. 242 (1880), with approval recognized that a witness may be compelled to answer any such question however irrelevant it may be to the facts in issue and however disgraceful the answer may be to himself, except where the answer might expose him to a criminal charge. The same court recognized, citing *Goins v. City of Moberly*, 127 Mo. 116, l.c. 118, 29 S.W. 985 (1895), that, if a witness is asked a question of some shameful act for the purpose of discrediting him, the person asking the question is concluded by his answer. Thus we see that there are two protections afforded the witness: (1) the right against self-incrimination, if properly claimed; and (2) the examiner is concluded by the witness's answer so as to avoid a confusion of issues on collater-

al matters. In *Wendling,* the court quoted from the *Long* case: "The better doctrine would seem to be that while such questions may be asked a witness on cross-examination, it is a matter largely within the discretion of the court before whom the case is to be tried." This statement was reaffirmed by our Supreme Court in *State v. Brooks,* 360 S.W.2d 622, 626 (Mo.1962); *State v. Brotherton,* 266 S.W.2d 712, 715 (Mo.1954) and *State v. Potts,* 239 Mo. 403, 144 S.W. 495, 498 (1912).

In fact, *Long, Wendling* and their progeny are nothing more than a particularized application of the general rule that the extent of cross-examination on collateral matters for the purpose of impeachment is a matter largely within the discretion of the trial court. In *State v. Allen,* 435 S.W.2d 375, 377 (Mo.1968) (court refused to permit witness to be asked whether she earned her living by prostitution); *State v. Cox,* 352 S.W.2d 665, 673 (Mo.1962) (whether witness stabbed her brother); *State v. Brooks,* supra, (whether he had violently attacked and manhandled a woman) and *State v. Messley,* 366 S.W.2d 390, 393 (Mo. 1963) (whether witness had committed an illegal act), our Supreme Court upheld the trial court's refusal to allow questioning a witness concerning specific acts of alleged misconduct relating to collateral matters. We hold that the latitude and extent of cross-examination on collateral issues to show specific misconduct for purposes of impeachment is initially a determination to be made by the trial court within the exercise of its discretion and will be set aside on appellate review only where it is affirmatively shown that the exercise of discretion was abused. Here there has been no such demonstration; therefore, we uphold the ruling of the trial court.

Defendant's next claim of error raises the question as to the validity of the admission into evidence of pre-trial identification testimony which was the claimed product of an unlawful detention; that is, where there is no probable cause to support the initial arrest. The state's evidence to support the arrest, made four months after the robbery, is meager at best. We shall, however, assume without deciding that the police arrested the defendant without probable cause.

In this posture defendant argues that the trial court should have suppressed the pre-trial identification testimony of Mrs. Daugherty on the grounds that such testimony was the "poison fruit" of an illegal arrest of the defendant. He relied upon *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), where officers lacked probable cause to arrest defendant on information providing the name and address of a person selling heroin because the information was not known to be reliable and the officers did not have sufficient reason to believe the person named and defendant were one and the same person; and *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), where officer lacked probable cause to arrest a black defendant because the victim was only able to describe her assailant as a Negro youth.

We have no legal quarrel with the holding in *Wong Sun* that intangible evidence can be as much the "fruit" of an illegal arrest as the traditional tangible evidence of papers has previously been held to be. Nor do we question that the exclusionary rule of evidence can be applied to the direct and indirect products of illegal police activity. On the other hand, *Wong Sun* also held that all evidence is not "fruits of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. The court stated that the proper inquiry should be, granting the establishment of the primary illegality, is whether the evidence objected to "has been come at by exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Id. at p. 487, of 371 U.S., at p. 417 of 83 S.Ct., quoting Maguire, Evidence of Guilt, 221 (1959).

■ In *State v. Thomas,* 491 S.W.2d 328, 330 (Mo.1973), the Missouri Supreme Court adopted the statement of the *Wong Sun* court and cited *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); *People v. Walker,* 27 Mich.App. 609, 183 N.W.2d 871, 874 (1970) as cases which made it clear that the doctrine of the fruits of the poisonous tree is inapplicable if the evidence emanated from an independent source, or the causal connection between the primary illegality and the prosecution's proof became so attenuated as to dissipate the taint.

In *Thomas,* the court rejected the defendant's contention that the identification evidence should have been suppressed, even though the defendant's arrest for homicide was constitutionally defective. Admittedly, *Thomas* is distinguishable on its facts, since the police did have probable cause to arrest Thomas for armed robbery, the charge for which he was convicted. However, other courts which have considered the question have been virtually unanimous in holding that an illegal arrest does not render inadmissible identification testimony resulting from a subsequent lineup or photographic identification. *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33, 37 (1972); *Jones v. State,* 5 Md.App. 489, 248 A.2d 166, 169 (1968); *Commonwealth v. Davy,* 227 Pa.Super. 455, 323 A.2d 148, 149 (1974); *State v. Hodgson,* 44 N.J. 151, 207 A.2d 542, 545 (1965); *People v. Love,* 24 Ill.App.3d 477, 321 N.E.2d 419 (1974); *Smith v. State,* 6 Md. App. 59, 250 A.2d 285, 290 (Md.App.1969); *People v. Pettis,* 12 Ill.App.3d 123, 298 N.E.2d 372, 375–76 (1973); *Johnson v. State,* 496 S.W.2d 72, 74 (Tex.Cr.App.1973). See also, *LeBlanc v. United States,* 391 F.2d 916, 917 (1st Cir. 1968); *People v. Shannon,* 256 Cal.App.2d 889, 64 Cal.Rptr. 491, 493 (1967); *People v. Stoner,* 65 Cal.2d 595, 55 Cal.Rptr. 897, 422 P.2d 585, 589–90 (1967). In *Commonwealth v. Garvin,* supra, the court stated:

"Although we agree with appellant as to the illegality of the arrest we must disagree with his contention that the identifications must be suppressed. No law abiding society could tolerate a presumption that but for the illegal arrest the suspect would never have been required to face his accusors. Thus, we conclude that the only effect of the illegal arrest was to hasten the inevitable confrontation and not to influence its outcome." Id. at 37 of 293 A.2d.

In *Jones v. State,* supra, 248 A.2d at 169, the following statement appears:

"Even if an arrest be illegal, therefore, testimony relating to the identification of the accused at a police lineup, or in a police station, or an identification made at trial is not inadmissible as the fruit of an illegal arrest. [Citations omitted]."

Finally, in *Payne v. United States,* 111 U.S.App.D.C. 94, 294 F.2d 723, 727 (1961) cert. denied, 368 U.S. 883, 82 S.Ct. 131, 7 L.Ed.2d 83, the court, in rejecting a contention identical to the one raised by the appellant, stated:

"The consequence of accepting appellant's contention in the present situation would be that Warren [the identifying witness] would be forever precluded from testifying against Payne in court, merely because he had complied with the request of the police that he come to police headquarters and had there identified Payne as the robber. Such a result is unthinkable. The suppression of the testimony of the complaining witness is not the right way to control the conduct of the police, or to advance the administration of justice. The rights of the accused in a case like the present are adequately protected when the complaining witness takes the stand in open court, for examination and cross-examination." [Citation omitted] Id. at 727 of 294 F.2d.

■ In any event, it is clear that under the authority of *State v. Thomas,* supra, the identification testimony was admissible, because the identification by Mrs. Daugherty

was not causally connected with the arrest but rather with the robbery itself, and because the identification testimony emanated from a source independent of the arrest, i. e., her recollections and observations at the time of the robbery. Mrs. Daugherty testified that the appellant was in visual proximity with her for at least fifteen minutes under conditions which she described as well-lighted. The defendant stood face-to-face with Mrs. Daugherty on several occasions close enough to take money from her brassiere and close enough to strike her on the head several times with a pistol. Mrs. Daugherty was able to give the police a detailed description of her assailant and was positive about her identification. Under these circumstances, it is clear that her identification testimony had an origin and a basis independent of either the arrest or the lineup and was, therefore, admissible. *State v. Wallace,* 504 S.W.2d 67, 73 (Mo. 1973); *State v. Ross,* 502 S.W.2d 241, 246 (Mo.1973); *State v. Taylor,* 496 S.W.2d 822, 824 (Mo.1973).

▮ Finally, the defendant criticizes the lineup itself implying that it was suggestive because the defendant was the only person wearing outdoor clothing. It is, however, clear that Mrs. Daugherty placed no significance on the fact that the defendant was wearing a sweater and stated that at least one other individual in the lineup appeared to be similarly dressed. In this regard, see *State v. Britt,* 504 S.W.2d 38, 42 (Mo.1973), where the court rejected the argument that a lineup was defective because the defendant was the only person wearing a hat or coat. The court noted that the robbers had not been wearing coats at the time of the offense and that, hence, the difference in dress would have been favorable to the defendant. Likewise, the defendant in the instant case was wearing a black "heavy knit sweater" at the lineup; during the robbery he was wearing a brown coat. See also, *State v. Hampton,* 509 S.W.2d 139, 141 (Mo.App.1974). Therefore, the court properly admitted into evidence the identifica-

tion testimony of Mrs. Daugherty. Defendant is entitled to no relief on this point.

Next, we consider defendant's contention that the court wrongfully refused to suppress the identification testimony of Linda Cope. During the progress of the robbery, Linda, a neighbor of Mrs. Daugherty's, came into the store. First she was told to lie on the floor; however, when the robber saw that she was pregnant, he told her to sit down on a chair and not to look up. She identified defendant as the person who sat on a tool box just a few feet from her most of the time. To the police she described defendant as a Negro male, 5′ 5″ or 5′ 6″ tall, wearing a dark colored coat.

The controversy over Mrs. Cope's testimony arose because immediately prior to the first trial she was shown two photographs by the prosecutor without notice or the presence of defendant's attorney. The first photograph was a picture of the lineup. She testified that she was asked if she could pick out any of the robbers, but that no one prompted her or told her whom to select. Nor did anyone tell her whom Mrs. Daugherty had selected. After she made a selection of defendant from the lineup exhibit, she was then shown a single photograph of defendant.

Defendant's complaint that the photographic display of the two exhibits was invalid because of the absence of counsel. We disagree.

▮ Missouri courts have held that a photographic identification prior to indictment or information is not at a "critical stage" requiring the presence of counsel. *State v. Brookins,* 468 S.W.2d 42, 47 (Mo. 1971); *State v. Letourneau,* 515 S.W.2d 838, 843 (Mo.App.1974); *Steward v. State,* 499 S.W.2d 830, 833 (Mo.App.1973). However, the issue of whether or not counsel is required at a post-indictment or information photographic identification remained an open question until *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). In *Ash,* the court stated:

"[T]he Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender. . . ." Id. at 413 U.S. 321, 93 S.Ct. at 2579.

Although the defendant suggests that this court should follow the example of the Michigan courts and rule that counsel should be appointed at post-information or indictment confrontations, we note that, with the exception of Michigan, no state or federal jurisdiction has reached such a result subsequent to *Ash*. *United States v. Chrisco,* 493 F.2d 232, 239 (8th Cir. 1974); *Evans v. Janing,* 489 F.2d 470, 473 (8th Cir. 1973); *United States v. Poole,* 161 U.S.App. D.C. 289, 495 F.2d 115, 118 (1974).

*United States v. Poole,* supra, involved a situation similar to the case at bar. In *Poole,* the witness attended a lineup but because of nervousness made an erroneous identification. A few weeks later (and shortly before trial) the witness asked for the photograph of the lineup, from which she identified the defendant. The court upheld the identification, notwithstanding the absence of counsel, on the basis of the *Ash* decision.

Defendant's reliance upon *State v. Wallace,* 285 So.2d 796 (La.1973) is misplaced. *Wallace* does not hold—as the defendant seems to suggest—that counsel must be employed at a post-information or indictment photographic identification. Rather, the reversal in *Wallace* was based on the suggestive identification procedures utilized by the state at the photographic identification.

No suggestive procedures were present in the instant case. As previously noted, the witness was first shown a photograph at the lineup and selected the defendant without prodding or suggestion from the assistant circuit attorney. She had not been informed that Mrs. Daugherty had selected the defendant from the lineup. Although the defendant contends that Mrs. Cope knew that Mrs. Daugherty had identi-

fied the defendant this assertion is grossly misleading. Mrs. Cope testified at trial that she was aware that Mrs. Daugherty had identified the defendant from a lineup, but she did not testify that she was aware at the time she identified the defendant from the photograph that Mrs. Daugherty had selected him from a lineup that Mrs. Daugherty had witnessed.

Thus, since there was no evidence that any improper suggestions were made by the assistant circuit attorney or that the likeness of the defendant in the lineup photograph was unduly emphasized, the court committed no error in denying the defendant's motion to suppress. *State v. Johnigan,* 494 S.W.2d 23, 24 (Mo.1973); *State v. Balle,* 442 S.W.2d 35, 39 (Mo.1969) and *State v. Gay,* 523 S.W.2d 138 (Mo.App.1975).

Finally, we have considered claim of error as to the court's refusal of certain proffered instructions, and have found them to be without merit. First, defendant failed to set out the instructions in the argument portion of his brief as required by Rule 84.04(e), V.A.M.R.; hence, the point is not preserved for review. *State v. Larkins,* 518 S.W.2d 131, 135 (Mo.App. 1974); *State v. Mesmer,* 501 S.W.2d 192, 197 (Mo.App.1973). And secondly, each of the proffered instructions was a cautionary instruction, and to give or refuse to give any of the instructions offered rested in the sound discretion of the court. *State v. Collor,* 502 S.W.2d 258, 259 (Mo.1973) and *State v. Taylor,* 472 S.W.2d 395, 401–402 (Mo. 1971).

Judgment affirmed.

SIMEONE, P. J., and GUNN, J., concur.