STATE of Missouri, Respondent,

v.

Ronald E. TIMLEY, Appellant.

No. KCD 28091.

Missouri Court of Appeals, Kansas City District.

July 6, 1976.

Motion for Rehearing and/or Transfer Denied Aug. 2, 1976.

Application to Transfer Denied Oct. 12, 1976.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Charles L. Howard, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Ronald E. Timley was charged in the Jackson County Circuit Court with burglary and stealing. On trial, a jury found him guilty of the burglary charge, fixing punishment at two years' imprisonment, and not guilty of stealing. He has appealed from the ensuing judgment and sentence.

At around 11:30 A.M., October 7, 1974, Ms. Victoria J. Milligan left her apartment, Apartment One at 1007 East 42nd Street, Kansas City. She secured both the front and rear doors. When she returned to her apartment at around 4:00 P.M., she noticed that her television receiver had been moved to the rear door. She had given no one permission to enter her apartment.

At around 12:00 or 12:30 P.M., October 7, Ms. Leola C. Anderton, owner of the building where Ms. Milligan lived, was cleaning her automobile in a driveway behind her office at 4206 Troost, near the apartment

building at 1007 East 42nd Street. Ms. Anderton noticed an automobile which she described as a white Cadillac backing down the driveway to the rear of 1007 East 42nd. She noticed that the driver was black and knew that no black person lived in the apartment. She saw the driver, whom she identified as appellant, stop the car and open the trunk. Ms. Anderton went up to the driver and asked if she could help him. " * * * [T]he backs of four people, plus him, scurried up to my first floor landing, * * * and went in the door." They went in the rear door of Ms. Milligan's apartment.

Ms. Anderton noted the license number of the automobile and went to her office and called the police. When police arrived she went with an officer to the rear of the apartment building. The automobile had left. There, at the ground level, they found a television set, belonging to Ms. Milligan. They returned the television to the apartment but did not see Ms. Milligan. Ms. Anderton locked the apartment and left it at around 12:30 P.M.

At around 12:20 P.M., Officer Jones on police patrol received a dispatch to go to 1007 East 42nd Street, "a prowler call." He met Ms. Anderton there and went to Apartment One where he found the front door open. He entered the apartment and found that things appeared to have been moved. He left and went to the rear and started up the steps to the apartment and discovered a television set. He then went up the steps to the rear door which he found partially open, with pry marks on it.

Officer Jones got the license number of the auto from Ms. Anderton M S 5–249, Missouri. The only description of the prowlers which he obtained was "Negro males."

Police ascertained that license M S 5–249 had been issued to Nathaniel Combs, 4505 Virginia, for a Lincoln automobile.

Officers Kopp and Rathburn were sent to the Virginia address at between 12:25 and 12:30. They saw a blue Lincoln bearing license M S 5–249 parked in front of that address.

The police dispatch was for the pickup of four Negro males in connection with the burglary. Officer Kopp went to the front door of the residence, knocked and a woman who identified herself as Mary Combs answered. The officer asked if Nathaniel Combs was there and she said that he left early in the morning to go to work. She said no one was in the house but her and her baby.

The officers returned to the car and checked the motor block and found that it was warm.

At about that time a pedestrian was struck by an auto at 45th and Virginia. The investigating officers saw appellant come from the house at 4505 Virginia and walk toward the scene of the accident. The pedestrian was his daughter. Police approached appellant and asked him his identity. He told them and they placed him under arrest for burglary. The police returned to the Virginia address and eventually discovered three other black males in the attic of the residence. They were Nathaniel Combs, DeWayne Ashley and Algene Hall. Ms. Combs is the mother of appellant. Nathaniel Combs is his half-brother.

Fingerprint examination of the burglarized apartment, including the television set, produced no prints identified as those of appellant; nor did fingerprint examination of the automobile. Ms. Anderton picked appellant from a six-man lineup at around 9:00 P.M. on the date of the burglary.

At his trial, appellant denied that he took part in the burglary, testifying that he had been out looking for work earlier in the morning and returned to the house at

around 11:30 A.M. and went to sleep. He was awakened by his mother's calling that his daughter had been in an accident and when he went outside to investigate, he was arrested.

On this appeal, the first contention of appellant is that the trial court erred in overruling his motion to suppress Ms. Anderton's lineup identification because it was the "fruit" of his unlawful arrest. As pointed out in *State v. Lynch*, 528 S.W.2d 454, 458–460[7]–[9] (Mo.App.1975), courts which have considered the question "have been virtually unanimous in holding that an illegal arrest does not render inadmissible identification testimony resulting from a subsequent lineup or photographic identification." 528 S.W.2d 459. In *State v. Thomas*, 491 S.W.2d 328 (Mo.1973), the court held that the "poisonous tree" doctrine of *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), relied upon by appellant, is inapplicable to evidence of a lineup identification where such evidence emanated from an independent source or where the causal relationship between the claimed illegal arrest and the prosecution's proof became so attenuated as to dissipate the proof.

Here, the identification of appellant by Ms. Anderton had an independent source in her meeting appellant outside the apartment house when the burglary occurred and was not causally connected with the arrest. Therefore, the "poisonous tree" doctrine is not applicable and the validity of the arrest need not be further considered. *State v. Lynch*, supra; *State v. Thomas*, supra.

Appellant contends that the trial court erred in giving Instruction No. 7 on general responsibility for the conduct of others (MAI–CR 2.10) when the verdict-directing instruction on burglary and stealing made no reference to joint action. Appellant contends that when an instruction in the form of MAI–CR 2.10 is given, the court is required to give a verdict-directing instruc-tion in the form of either MAI–CR 2.12 or 2.14, as the facts require.

The state contends that Paragraph 4 of Notes on Use under MAI–CR 2.10 permits the use of MAI–CR 2.10 in the absence of the use of either MAI–CR 2.12 or 2.14. The Note on Use states:

"4. The failure to use MAI–CR 2.10 and 2.12 will not be deemed error even if there is substantial evidence that the defendant was a joint, active participant or actor so long as there is no evidence that he was only an aider or encourager."

The state contends that this language permits the use of MAI–CR 2.10 alone so long as there is no evidence that the de-fendant was only an aider or encourager.

The St. Louis District recently considered the use of 2.10 alone in a case in which the defendant was only an aider or encourager and concluded that in such case 2.14 was required to be used in connection with 2.10 in order to submit to the jury the issue of knowing and intentional aid and encourage-ment. *State v. Poor*, 533 S.W.2d 245, 251–252[10, 11], [12] (Mo.App.1976). See also *State v. Lemon*, 504 S.W.2d 676, 683–684[14] (Mo.App.1973).

Here there was evidence that appellant was an active participant in the burglary and he makes no contention that 2.14 should have been given.

The scheme of MAI–CR clearly con-templates the use of 2.10 in connection with either 2.12 or 2.14. The language of Para-graph 4 of the Notes on Use under 2.10, relied upon by the state, does not mean that 2.10 may be given without a verdict-direct-ing instruction in the form of either 2.12 or 2.14. Absent the verdict-directing instruc-tion in such language, the jury is given no instructional guide for the application of the abstract principles stated in 2.10. *State v. Lemon*, supra.

◼ The question remains whether failure in this case to phrase the verdict-directing instruction in the form of 2.12 was prejudicial error. Rule 20.02. Appellant contends that the jury might have construed the instruction as an implied comment on the unbelievability of his defense that he was home sleeping at the time of the offense. That is a far too strained construction to place upon the instruction. The state's evidence clearly showed that more than one person was involved in the burglary. Therefore, Instruction No. 7 did relate to evidence before the jury. The instruction in no way assumes that appellant was one of the persons involved. The jury was required to find that he did actively participate in order to find him guilty under the verdict-directing instruction. In these circumstances, the giving of Instruction No. 7 was not prejudicial. *State v. Brown*, 332 S.W. 904, 909–910[7–10] (Mo. 1960).

Appellant complains of the trial court's refusal to give an instruction, tendered by appellant, which would have required the jury to scrutinize carefully the testimony of the eyewitness who identified appellant. The instruction was in the form of Instruction No. 5, given by the court in *State v. Murphy*, 508 S.W.2d 269, 275 (Mo.App.1974).

◼ *State v. Murphy*, supra, did not change the law that such an instruction is a cautionary instruction, to be given in the exercise of the trial court's discretion. *State v. Taylor*, 472 S.W.2d 395, 401–402[3, 4] (Mo.1971). No abuse of discretion has been demonstrated here.

◼ Appellant's contention that the evidence was insufficient as a matter of law to sustain a conviction for burglary is without merit. Appellant concedes that the evidence showed that a burglary occurred but contends that it was insufficient to show that he participated in it. The evidence showed that appellant was the driver of the automobile which backed up to the apartment building where the burglary occurred; that he opened the trunk of the auto and, when spoken to by Ms. Anderton, fled up the rear stairs into the apartment which was subsequently found to have been forcibly entered. Appellant relies upon an obvious misstatement by the prosecutor in one of his questions to Ms. Anderton in which he stated that the witness had said she was cleaning her car at around 10:00 or 10:20. Appellant argues that on this basis he was in the vicinity according to Ms. Anderton more than an hour before the burglary was discovered. Ms. Anderton had previously placed the time at between 12:00 and 12:30 and again did so in her cross-examination. This time was consistent with the testimony of the police officer who investigated the burglary. In passing upon the sufficiency of the evidence, the evidence must be viewed in the light most favorable to the state's case. *State v. Stapleton*, 518 S.W.2d 292, 296[1] (Mo.banc 1975). Appellant would view the evidence in the least favorable light.

The state's evidence was more than adequate to permit the jury to conclude beyond a reasonable doubt that appellant was an active participant in the breaking and entering of the apartment and that, although their efforts were frustrated, the entry was with intent to steal.

Judgment affirmed.

All concur.