STATE of Missouri,
Plaintiff-Respondent,

v.

Joseph Walter REDECKER,
Defendant-Appellant.

No. 39104.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Oct. 10, 1978.

Dewey S. Godfrey, Jr., St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Robert L. Presson, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit

Atty., Richard Poehling, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

STEWART, Presiding Judge.

Defendant appeals from the judgment entered upon a verdict of a jury finding defendant guilty of receiving stolen property in the amount of $50.00 or over.

Defendant contends that the court erred in failing to sustain his motions to suppress the evidence of the stolen television set and in failing to quash the arrest warrant. He also charges that the court erred in failing to give MAI–CR 3.54 at his request. We affirm.

Alfred Anderson had been Renee Anthony's boyfriend for about a year. He stayed at her home on the night of May 11, 1975. The following morning he left the house after Renee and set the lock so that he could regain entry. He went to his grandmother's home. His uncle, Roy Wash, and the defendant were present. He told them that he was going to take the television set and other furniture from Renee's house. Defendant let Anderson use his truck for that purpose and agreed to purchase the television set. Anderson delivered the set to defendant who paid him $150.00. The television set was seized from defendant's home under a search warrant on September 26, 1975 and he was arrested later on that day.

Defendant contends that the court erred in failing to sustain the motion to suppress evidence and motion to quash warrant of search and seizure filed by the defendant because the search of the defendant's home on September 4, 1975 was without warrant and no exigent circumstances were present; that during the course of the warrantless search on that date the police discovered and acquired information from the premises as to the identification of the stolen television set; that subsequently the police acquired information that the Magnavox television set was stolen. To this information was added the illegal information which provided them with the opportunity to ob-tain a warrant of search and seizure which was executed on September 26, 1975. He claims that information obtained on September 4, 1975, as a result of the warrant-less search, was "Fruit of the Poisonous Tree" and without it the police never could have pieced together the two facts in order to be able to determine the locale of the television set and the identity of the person in whose possession it was found.

The facts pertinent to this contention are that on September 3, 1975, Detective Titone of the Second District received a tip from a confidential informant that defendant was dealing in stolen property, primarily C.B. radios and stereos. On September 4, 1975, Detective Titone, accompanied by Detectives Grieshaber, Qualls, Allen and Pate, went to defendant's residence. They did not have a search warrant. Detectives Grieshaber and Qualls knocked at the rear door while Detectives Titone, Allen and Pate went to the front door. Sandra Paulus, defendant's stepdaughter, who was living with Mr. and Mrs. Redecker, answered the rear door. The officers identified themselves to Miss Paulus and asked to talk with defendant. She asked them to "step in." Miss Paulus told them that her stepfather was not home. She then went to the front door and admitted the other officers. While in the kitchen Detective Grieshaber noticed a box on the floor which contained C.B. radios and tape recorders. He asked Miss Paulus if he could look through the box, and she stated that she didn't care since it wasn't hers. Detective Grieshaber verified through the police computer that one of the items in the box was stolen. The other officers then searched the premises. Detective Grieshaber also ran a computer check on a serial number taken from a Magnavox color television set. He was advised that the television set had not been reported as stolen.

On September 25, 1975, Renee Anthony contacted Detective Allen and told him that Alfred Anderson admitted stealing her Magnavox television set and selling it to defendant for $150.00.[1] Anderson gave Re-

1. Mrs. Anthony had reported the theft to another police district shortly after the theft.

nee Anthony the defendant's name and phone number. She called defendant, who refused to return the set unless his money was refunded.

Based on this information, Detectives Allen and Titone interviewed Alfred Anderson who was incarcerated on another charge. Anderson admitted the theft and confirmed the fact that he had sold the set to the defendant. A search warrant was applied for and issued on September 25, and executed on September 26. A Magnavox television set was seized from defendant's residence and later identified by Mrs. Anthony as hers.

Defendant very ably argues the illegality of the search of September 4, 1975. However, under the view that we take of the case we need not make a determination of the legality of the early search. Assuming arguendo the illegality of the original search, the issue is whether the warrant for search and arrest obtained on September 25 was the fruit of the earlier search in accord with the principals of *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ The facts obtained from an illegal search do not become "sacred and inaccessible" *Silverthorne Lumber Co., Inc. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1919). The "doctrine of the fruit of the poisonous tree is inapplicable if the evidence emanated from an independent source, or the causal connection between the primary illegality and the prosecutor's proof becomes 'so attenuated as to dissipate the taint'" *State v. Thomas*, 491 S.W.2d 328, 330 (Mo.1973).

■ In the case at hand the police officers who obtained the warrant were not aware that Mrs. Anthony's television set was stolen and was in the possession of defendant until she contacted them. They did not act solely upon the information obtained from her but obtained corroborating information from Anderson before they applied for the warrant. There is no evidence from which it can be said that the search of defendant's premises on September 4 in any way motivated the application for the warrant that resulted in the seizure of the television set. There was substantial basis for the trial court to determine that the evidence objected to and the arrest did not come about by reason of the exploitation of the warrantless search of September 4, but by reason of an independent source, the information given them by Mrs. Anthony and Anderson. *State v. Thomas, supra*. The trial court did not err in denying defendant's motion to suppress.

Defendant argues that under the following circumstances the court was required to give MAI–CR 3.54 [2] which he requested.

In the cross examination of a police officer, defendant sought to show that at the time of his arrest he told the police officer that he "bought the set legitimately from some guy." The court sustained the objection as being self serving. Defendant took the stand in his own behalf and testified that Anderson, whom he knew through Anderson's uncle, called him, said that he and his wife were breaking up and asked defendant if he wished to buy a television set. Defendant testified that he went to Anderson's grandmother's, examined the set and after some discussion paid $310.00 for it. He testified that he did not know it was stolen.

■ On cross-examination defendant was asked what he told the police at the time of his arrest. He testified as follows:

"A. I just told them I bought it.

Q. Legitimately from some guy?

A. Yes.

Q. You didn't tell them you bought it from Alfred Anderson?

**2.** The instruction reads: "If you find and believe from the evidence that on some former occasion the defendant made a statement consistent with his testimony in this case, you may consider such evidence for the purpose of deciding the believability of the defendant and the weight to be given to his testimony. However, in deciding his guilt or innocence, any prior statement of the defendant consistent with his testimony must not be considered by you as evidence of the matters contained in the statement."

A. No Sir, I did not. I didn't tell nobody but Mr. Godfrey when he asked me."

MAI–CR 3.54 is intended for use in instances where a defendant has been impeached and a prior consistent statement is placed in evidence for the purpose of rehabilitating the defendant. See *State v. Maggard*, 250 Mo. 335, 157 S.W. 354 (1913).

■ The defendant argues that the State attempted to impeach defendant with the statement to the police as inconsistent with his testimony at the trial. If, in fact, it could be said to be inconsistent, then there would be no basis for giving the instructions because there would then be no consistent statement to form the basis for rehabilitation.

The statement to the police was in fact consistent with his testimony at the trial. In as much as there were no inconsistent impeaching statements made by defendant the court was not required to give MAI–CR 3.54.

Finding no error, the judgment of the trial court is affirmed.

REINHARD and STEPHAN, JJ., concur.