**STATE of Missouri, Respondent,**

v.

**Terry MADEWELL, Appellant.**

**No. 11561.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 5, 1980.

John D. Ashcroft, Atty. Gen., John M. Morris, III, Asst. Atty. Gen., Jefferson City, for respondent.

W. Henry Johnson, Douglas, Douglas & Johnson, Neosho, for appellant.

GREENE, Judge.

Defendant Terry Madewell was jury—tried and convicted of the crime of second degree burglary, in violation of § 560.070, RSMo 1969, V.A.M.S. The trial court imposed a sentence of six years' imprisonment, pursuant to the Habitual Criminal Act. This appeal followed.

The relevant evidentiary facts are as follows. About 10:30 p. m., on the evening of July 20, 1978, Rick Bekemeier, the owner of Mount Vernon Lanes, a bowling alley in Mount Vernon, Missouri, closed his place of business for the night and locked a set of double glass doors in steel frames that were the entrance into the building. The outer and inner doors were separated by a small hallway, and there was a glass window, approximately 2 feet by 3 feet in size, on each side of the inner door. There were no pry marks on the doors, and the windows were not broken, at the time Bekemeier secured his place of business for the night.

Early the next morning (about 3:55 a. m.), Officer John Whitesell, a patrolman for the Mount Vernon Police Department, was dispatched to the bowling alley by the Lawrence County Sheriff's Department. Although the record is somewhat murky in that respect, it seems that an unnamed informant had called the sheriff's office, and advised them that a burglary was in progress at the bowling alley. Whitesell went to the scene, as did William Gaston, a Lawrence County Deputy Sheriff. They found the glass outer door had been pried open, and the left window next to the inner door had been broken. Whitesell and Gaston entered the building through the broken window and started a search. They first searched an office area and found that a small safe had been moved to the middle of the office floor from its normal position against the office wall. The search then was extended to an adjoining kitchen area. The kitchen contained a long counter with built—in cabinets underneath. Defendant and two other men, Randy Carter and Bobby Hudson, were lying on the floor with their bodies partially in a cabinet. Defendant was wearing gloves, and the other two

men had men's socks pulled over their hands. A bayonet type knife, whose blade matched pry marks on the front door, was found on a cabinet shelf near the defendant. A metal auger was found near the broken window, whose bit matched marks on the entrance doors near the locking mechanism. The bayonet and the auger had not been on the premises when Bekemeier closed up.

Defendant took the stand in his own defense. He stated that he was "riding around" on the night in question with Carter, Hudson, Carter's girl friend and Bill Thompson. They dropped Carter's girl friend off near Mayberry's Market and continued to cruise the streets. They were in defendant's car, and defendant was driving. Carter asked defendant to stop the car near the bowling alley. Defendant also got out of the car at this time. He said he had gotten out of the car to go to the bathroom, and had walked down to near the front of the bowling alley. He said that he then noticed Thompson leaving the scene, driving defendant's car. At that time, defendant said he saw a police car approaching with its "red light" on. Defendant said he "panicked", ran into the bowling alley, jumped through the broken window, and hid himself in the kitchen area with Carter and Hudson. He denied any knowledge of the ownership of the bayonet, and said Carter and Hudson had the auger when they left the car. He denied moving the safe, or having any knowledge of it. He denied that he was wearing gloves when he was arrested (two witnesses said he did). He admitted that if anyone had gloves on, or socks on their hands, under the circumstances, that they would consciously be participating in a burglary. He admitted that he, Carter, and Hudson were ex-convicts, having been convicted of prior felonies.

Defendant's first point relied on is that prejudicial error occurred when the trial court admitted certain photographs into evidence (state's Exhibits # 1 and # 2) because the state had failed to disclose the photographs to defendant, pursuant to his request, prior to trial. Exhibit # 1 was a photograph of the broken window and Exhibit # 2 was a photograph of the kitchen area of the bowling alley. No objection was made to the admission of the photographs into evidence at time of trial. The point, therefore, is not preserved for appellate review. *State v. Rideeoutte*, 572 S.W.2d 877, 879 (Mo.App.1978).

■ Plain error review under Rule 29.-12(b), V.A.M.R., is not warranted as no manifest injustice or miscarriage of justice occurred through admission of the photographs. The prosecuting attorney had never seen the photographs, that had apparently been taken by the local newspaper. They were shown to defendant's attorney as soon as the prosecutor received them. In addition, the photographs were merely cumulative of the testimony of witnesses (including defendant) concerning the appearance of the front of the bowling alley and the broken window. No prejudice occurred through the admission of the photographs. The point is denied.

■ Defendant's second point is that prejudicial error occurred when, during closing argument, the prosecuting attorney made reference to, and exhibited to the jury, a pair of gloves that had not been admitted into evidence. Defendant did not object to the prosecutor's argument, but did raise the point in his motion for new trial. Assignments of error regarding prosecutorial misconduct during closing argument are not for consideration on appeal unless an objection is timely made to the trial court at the time of the alleged misconduct. *State v. Blankenship*, 536 S.W.2d 520, 521 (Mo.App.1976). Since there was no timely objection at time of trial, the claim of error cannot be posthumously raised in a new trial motion or via a point in an appeal brief. *State v. Hulsey*, 557 S.W.2d 715, 718 (Mo.App.1977); *State v. Barton*, 593 S.W.2d 262, 264 (Mo.App.1980).

■ Plain error review is not justified on this point as it borders on the frivolous. A prosecuting attorney has the right to comment upon the evidence. *State v. Wilson*, 554 S.W.2d 511, 514 (Mo.App.1977). There was testimony before the jury, prop-

erly admitted and unobjected to, that on July 21, 1978, a month in which no frigid weather has occurred in the Ozarks within memory of man, that defendant was wearing gloves and that his two companions had socks on their hands, when apprehended in the bowling alley kitchen in the dead of the night. The prosecutor's reference to this fact in his closing argument was valid under any possible standard. There is absolutely nothing in the record to show that the prosecutor displayed the gloves to the jury during closing argument, except for an unsworn self–serving statement to that effect made by the defendant at the time of his sentencing, more than a month after trial. Such post–trial allegations are not self proving, *State v. Purvis*, 525 S.W.2d 590, 593 (Mo.App.1975) and, in the absence of any evidence to support such an allegation, are not reviewable on appeal. *State v. Simpson*, 529 S.W.2d 19, 21 (Mo.App.1975). The point is denied.

Defendant's next point is that prejudicial error resulted from the admission of state's Exhibit # 3 (the bayonet) and state's Exhibit # 7 (the auger) for the reason that there was no proof that the items were ever owned or possessed by defendant. Here again, no objection was made as to the introduction into evidence of these items at time of trial. The point was not preserved for appellate review. *State v. Peterson*, 546 S.W.2d 175, 179–180 (Mo.App.1976). Plain error review is not justified as the evidence showed that both the bayonet and the auger were used in connection with the burglary, and the bayonet was found in close proximity to the place where defendant was apprehended. The question is *not* whether there was proof of the two items ever being in defendant's actual physical possession, but whether there was substantial evidence connecting them with the defendant, or with those persons whom the jury could have reasonably found were co–participants in the crime (Carter and Hudson) or with the burglary itself. *State v. Thompson*, 559 S.W.2d 34, 35 (Mo.App.1977); *State v. Hill*, 539 S.W.2d 521, 525–526 (Mo.App.1976). The point is denied.

In his last point, defendant contends that there was insufficient evidence to sustain a conviction. We disagree. Evidence fairly showing any form of active participation in a crime is sufficient to support a conviction. Presence, companionship and conduct before, during, and after the commission of an offense are circumstances from which participation in the criminal act may be inferred. *State v. Jones*, 524 S.W.2d 186, 187 (Mo.App.1975). Defendant's active participation in the burglary may be fairly inferred from 1) his physical presence in the bowling alley at 3:55 a. m.; 2) his attempt to conceal himself in the kitchen cabinet; 3) his concealment in close physical proximity to Carter and Hudson, whom defendant admitted entered the building in commission of a burglary; 4) the fact that defendant, Carter and Hudson, on a night in the middle of July, had gloves and/or socks on their hands; and, 5) the fact the bayonet which was used to force open the door was found in close proximity to the place where defendant was apprehended.

The evidence created more than a mere circumstantial suspicion of guilt. It supported a clear and reasonable inference that defendant was an active participant with Carter and Hudson in the burglary. This being so, the evidence was clearly sufficient to sustain the conviction. We find no error, plain or otherwise, in the conduct of defendant's trial.

The judgment is affirmed.

All concur.