**STATE of Missouri, Respondent,**

v.

**Clifford and Richard PARHAM, Appellants.**

**No. WD 38704.**

Missouri Court of Appeals, Western District.

Oct. 13, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 1, 1987.

Application to Transfer Denied Jan. 20, 1988.

Daniel L. Radke, Dan Adams, Asst. Public Defenders, St. Joseph, for appellants.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and KENNEDY and LOWENSTEIN, JJ.

KENNEDY, Chief Judge.

Appellants Richard Parham and Clifford Parham were convicted upon jury trial of second-degree burglary, Sec. 569.170, RSMo 1979, and stealing, Sec. 570.030, RSMo Supp.1985. They were each sentenced to consecutive terms of seven years' and four years' imprisonment.

They appeal.

■ Each appellant challenges the sufficiency of the evidence to support the verdict against him.

We state a version of the facts which the jury was entitled to believe from the evidence before it. We take the evidence and inferences which support the verdict, ignoring contrary evidence and inferences. *State v. Garrett*, 682 S.W.2d 153, 154 (Mo. App.1984).

Fred and Lynda Hyde's rural residence was burglarized in the afternoon of September 21, 1985, before 3 o'clock p.m. The house was located a few miles south of St. Joseph on an east-west road named Barnett Road, about one mile east of Highway 371. This was a rural area, but it seems not to have been predominantly agricultural; there seems to have been several residences on small tracts, giving the area a somewhat suburban character. The Hydes were absent at the time of the burglary but returned home in separate vehicles at about 3 o'clock p.m. Lynda had been away since sometime that morning, but Fred had been gone a shorter time, perhaps as short as 30 minutes, judging from his activities during that time, possibly as long as one-and-a-half hours. Fred arrived before Lynda. As he approached the house in his pickup from the east and reached the crest of the hill where the house was located, he saw three men walking west along the road a short distance west of the driveway, at a point approximately even with the west boundary of his property. As Lynda and her passengers—the Hydes' young sons, Clinton and Logan, and a third young person, Shelly Carl, who lived with the Hydes —approached the house from the west brief minutes later, they met three men running westward. One of these three

men Lynda and Clinton, then 15 years of age, later identified as defendant Clifford Parham.

As Lynda reached her driveway and prepared to make a left turn into it, she stopped to yield the right of way to a westbound black Pontiac Grand Prix automobile driven by a person whom she and Clinton later identified as defendant Richard Parham. He was alone in the car.

Fred in the meantime had discovered that the house had been ransacked. He got back into his pickup as Lynda was arriving. He paused to tell her they had been burglarized and to tell her to call the sheriff. He then headed out the driveway and west along Barnett Road. There were no pedestrians on the roadway. He overtook a black Grand Prix Pontiac with four occupants as it approached Highway 371. It stopped before entering the highway, Fred directly behind it. As it turned north on to the highway, the Grand Prix accelerated sharply. Fred gave chase, staying close and no farther than a block behind. The two vehicles reached speeds of more than 100 miles per hour after they had turned off Highway 371 on to Highway 229 and then on to Highway I–29. The race came to an end when the Grand Prix failed to negotiate an exit from Highway I–29 and crashed into a guard rail. Its occupants scattered. Three of them were the men Fred had earlier seen walking along Barnett Road near his house. Three billfolds were found in the disabled Grand Prix, neatly stacked near the console. One of them contained Clifford Parham's driver's license. Besides Clifford's driver's license, the billfolds contained identification papers of James Merritt, and a person named Mitchell.

Law officers soon arrived at the scene. Searching the area they found Clifford hiding in a bean field two miles from the wrecked car.

Missing from the Hyde house were several firearms, jewelry, a VCR, a remote control, a pocket watch, a camera, a coin collection, and $130 cash. The weapons, the VCR and the coin collection were found in the Hydes' yard at a point opposite where Fred had first seen the three men walking west on Barnett Road. Later the remote control was also found in the yard. None of the other items was recovered. Clifford Parham had $130 on his person when he was apprehended in the bean field.

A black Pontiac Grand Prix had been seen on the afternoon of the burglary by a neighbor who lived 275 to 300 feet from the Hyde residence, first driving slowly past the neighbor's house in a direction away from the Hyde residence, and shortly thereafter driving by in a direction toward the Hyde residence. The car then turned into the Hyde residence and stopped. Two occupants got out of the car and ran around the house, where they could not be seen by the neighbor. The car was still there when the neighbor a few minutes later left his home. His observations had taken place over a space of approximately 10 minutes, between 2:35 and 2:45 o'clock p.m.

The Parhams lived in St. Joseph, a distance of six miles from the place of the burglary.

The foregoing is sufficient to support the verdict. There was more than an opportunity to commit the crime, coupled with the flight of the defendants—circumstances which in themselves have been held not to sustain a conviction for burglary and stealing. *State v. Prier*, 634 S.W.2d 197, 200 (Mo. banc 1982). There was the presence of both defendants in the vicinity of the Hydes' house during the time frame of the burglary; their flight; no legitimate purpose for being in the vicinity (Clifford gave a colorable legitimate explanation for his presence, see infra, but the jury was not obliged to accept it); and the unaccountable activity of the four men including the two defendants. *See State v. Madewell*, 605 S.W.2d 205, 208 (Mo.App.1980).

There is evidence to connect each of the Parhams with the black Grand Prix, which was seen at the Hydes' house while the Hydes were absent, at about the time of the burglary. This circumstance distinguishes this case from cases cited by defendants where the circumstantial evidence has been held insufficient for conviction. Lynda and Clinton identified Richard as

being its driver when she met it in the road at her driveway. It is inferable that he then picked up the three men who were afoot, including Clifford, and that these four were the occupants of the car when Fred overtook it and gave chase.

On the other hand, Clifford in his testimony acknowledged the car as his own and acknowledged he was driving it in the vicinity of the burglary at the time thereof. He testified his purpose in being there was to seek work in tobacco fields, and that he was accompanied by James Merritt. He denied driving into the Hyde residence, as described by the neighbor.

As to Clifford, it is also of some significance when considered with other circumstances, that he had on his person when apprehended cash in the exact or approximate amount as that taken from the Hyde house. Money is a fungible, of course, but it was on his person—in a pants pocket, we suppose—separated from his billfold which had been left in the car.

The evidence is something of a jumble, and is not without its mysteries, but it was not necessary for the jury to fit it all into a cohesive scheme, to reconcile all inconsistencies and fill in every blank space—nor is it necessary for us to do so. "A burglary conviction may be upheld on accumulated facts no one of which alone creates more than a suspicion of guilt." *State v. Berryhill,* 673 S.W.2d 444, 445 (Mo.App.1982).

Having held that the evidence was sufficient to support the verdicts against both Richard and Clifford, we now turn to their allegations of trial error.

■ Appellant Richard claims that he was prejudiced when a state witness, a police officer, identified a photograph of him as a "mug shot". He says this implied to the jury that he had a criminal record. Prior to the witness's reference to a mug shot, though, defendant himself had testified that he had two felony convictions and two misdemeanor convictions. No prejudice could therefore have resulted to him from the witness's reference to defendant's photograph as a mug shot. *State v. Jones,* 531 S.W.2d 67, 73 (Mo.App.1975).

■ Richard then claims that the state's verdict-directing instruction nullified his alibi defense since they did not specify the time of day the offense occurred. The state's evidence fixed the time of the offense as occurring between 2:30 and 3:15 o'clock p.m. Richard's own testimony and that of his witnesses was that he was with family and friends from 12 o'clock noon of that day to 6:30 o'clock p.m., and was never in the vicinity of the victims' home. It was not necessary for the verdict-directing instruction in this case to pinpoint the time of the burglary. If the jury had believed Richard's alibi defense, they would have acquitted him under the instructions that were given. The precise time was not crucial to the alibi defense and there was no error in the court's omission to include the precise time of the burglary in the verdict-directing instruction. *State v. Graves,* 588 S.W.2d 495, 497 (Mo. banc 1979); *State v. Shives,* 601 S.W.2d 22, 26 (Mo.App.1980); *State v. Siems,* 535 S.W.2d 261, 266 (Mo.App.1976); *State v. Clark,* 509 S.W.2d 740, 744 (Mo.App.1974).

The judgments of conviction are affirmed.

All concur.