STATE of Missouri, Respondent,

v.

James MERRITT, Appellant.

No. WD 39216.

Missouri Court of Appeals,
Western District.

March 29, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 3, 1988.

Tim Wynes, Columbia, for appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for respondent.

Before GAITAN, P.J., and TURNAGE and CLARK, JJ.

TURNAGE, Judge.

James Merritt was found guilty by a jury of burglary in the second degree, § 569.170, RSMo 1978, and stealing, § 570.030, RSMo Supp.1985. On finding Merritt to be a persistent offender, the court sentenced him to consecutive terms of seven years' and four years' imprisonment.

Merritt contends the evidence was insufficient to support the verdict and complains of juror misconduct. Affirmed.

On September 21, 1985, Fred and Lynda Hyde lived on Barnett Road, south of St. Joseph. The Hydes were gone during the afternoon, but Fred returned home about 3:00 p.m. When he entered the house, he noticed that it had been ransacked. He ran out of the house and got in his truck to drive down Barnett Road to search for three men he had noticed walking along that road as he was returning home. At the time, he had thought it was unusual that they were walking because it was raining and misting.

Lynda had pulled into the driveway while Fred was in the house. When Fred ran out to get into his pick-up, he told her to call the sheriff because someone had broken into their home.

Fred drove down Barnett Road and overtook a black Pontiac Grand Prix occupied by four men. The clear inference from the testimony is that the three men were no longer on the road. Fred followed the Grand Prix. When it got on Interstate 29, the Grand Prix accelerated to 100 m.p.h., but Fred was able to stay close behind. When the Grand Prix attempted to exit at Faucett, it hit a guard rail and came to a stop. The four men jumped out of the car and ran. One of the four men that Fred observed jump from the car was one of the three Fred had seen walking on the road near his home. After the men fled from the car, Fred looked inside and found three billfolds. One of the billfolds contained Merritt's social security number, an insurance coverage statement for him on a vehicle other than the Grand Prix, and his birth registration.

Lynda testified that as she drove home on Barnett Road, she observed one man on the north side of the road, who she identified as Merritt, and two men running on the south side of the road. The two on the south side crossed in front of Lynda's car to join Merritt on the north side. When Lynda reached her driveway, she stopped to allow a black Pontiac Grand Prix to proceed down Barnett Road toward the three men.

John Abarr testified that he lived in a house close to the Hyde residence, and on Saturday afternoon, he saw a black Grand Prix Pontiac pass the Hyde home. About ten minutes later, it came back and turned

into the Hyde driveway. He saw two men get out of the car and run up to the house, but they disappeared from view.

Items taken from the Hyde residence included guns, a coin collection, and a VCR. These items were located about 50 feet west of the Hyde house, just off of Barnett Road and roughly opposite where the three men had been seen. There was an embankment from Barnett road to the point where the items were located, and the bank had tracks and skid marks in the wet dirt.

A deputy sheriff testified that an intensive search was conducted of the area near where the Grand Prix hit the guard rail. Clifford Parham was arrested in a nearby field. Merritt was arrested about 10:00 p.m. that night walking along a highway about three or four miles north of the Faucett exit.

Merritt alleged in his motion for a new trial that juror Carolyn Anthony was guilty of misconduct by failing to reveal during voir dire that she knew Merritt. The motion further alleged that juror Anthony had gone to her place of employment during an overnight recess in the trial and obtained files concerning the personal history and credit rating of Merritt. It was alleged that the next day, during deliberations of the jury, Anthony said she knew Merritt and revealed information from those files to the jury.

Merritt contends that the evidence was insufficient to support the verdict. This court recently decided *State v. Parham,* 741 S.W.2d 693 (Mo.App.1987), in which Richard Parham and Clifford Parham were convicted of the same burglary and stealing from the Hyde residence as is involved in this case. This court noted that there were three billfolds found in the Grand Prix, neatly stacked near the console; one of them contained Clifford Parham's driver's license, and another contained identification of Merritt.

■ The only difference between the evidence in the *Parham* case and the evidence here was that in *Parham,* Lynda identified Richard Parham as the driver of the Grand Prix. On virtually identical evidence, this court found the evidence sufficient to sup-port the verdict against the Parhams. For the reasons set out in *State v. Parham, supra,* the evidence was sufficient to support the verdict against Merritt.

Merritt next contends he is entitled to a new trial for the misconduct of juror Anthony by her failure to disclose on voir dire that she knew Merritt. The motion for new trial failed to allege when knowledge of the alleged misconduct came to the knowledge of Merritt or his attorney. In *State v. Robbins,* 455 S.W.2d 24, 28 (Mo. App.1970), the court held that when misconduct of a juror is alleged, it has long been held that there must be a showing that such knowledge was first acquired after submission of the case. The court stated that a defendant who claims misconduct on the part of a juror is required to call that fact to the court's attention at the first moment he becomes possessed of such knowledge and has an opportunity to do so. *Id.* at 27[7, 8]. The court further stated:

> If a defendant fails to do this at the time the misconduct happens, then, in order that he may later successfully complain thereof, it must be made to affirmatively appear that defendant and his counsel were ignorant of the infraction at the time it occurred.

*Id.* The court noted that the reason for this rule is that a defendant who is aware of juror misconduct cannot gamble on a verdict by remaining silent and thereafter take advantage of the matter by first asserting it in a motion for a new trial. *Id.*

■ In this case, the motion for new trial is completely silent as to when Merritt or his attorney first acquired knowledge of the alleged misconduct on the part of juror Anthony. Under the rule in *Robbins,* the alleged misconduct by Anthony in concealing her acquaintance with Merritt is not preserved for review.

The only evidence of the alleged misconduct on the part of juror Anthony as to her concealment of her acquaintance with Merritt and her telling the jury about his background came through an offer of proof by an examination of several members of the jury during the hearing on the motion for

new trial. This examination covered statements made to the jury by Anthony during deliberations. The court refused to consider this offer of proof. In *State v. Babb*, 680 S.W.2d 150, 152[3] (Mo. banc 1984), the court quoted from *State v. Underwood*, 57 Mo. 40, 52 (1874), as follows:

> "The rule is perfectly settled, that jurors speak through their verdict, and they cannot be allowed to violate the secrets of the jury room, and tell of any partiality or misconduct that transpired there, nor speak of the motives which induced or operated to produce the verdict."

Under *Babb*, the court correctly refused to consider the offer of proof concerning statements made in the jury room by Anthony during deliberations.

The judgment is affirmed.

All concur.