STATE of Missouri, Respondent,

v.

Bruce C. FRANKLIN, Appellant.

No. 53641.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 12, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 10, 1988.

Application to Transfer Denied
Sept. 13, 1988.

Roger M. Hibbits, Florissant, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Judge.

Defendant was convicted by a jury of possession of a controlled substance, a felony under § 195.020, 195.200.1(1) RSMo 1982. He was sentenced as a prior offender to a term of 15 years with the Department of Corrections and Human Resources. We affirm.

Defendant's appeal raises six points that we summarize as follows: (1) the state failed to provide defendant with discoverable and exculpatory material; (2) inadmissible hearsay statements were admitted by the trial court; (3) a defense witness was improperly impeached; (4) evidence against the defendant was illegally obtained and should have been suppressed by the trial court; (5) the jury selection process was tainted by racial prejudice and (6) the threat of disclosure of defendant's prior drug conviction denied him an opportunity to testify on his own behalf.

Our review in this case is limited to a consideration of the whole record and consideration of the facts in evidence and the inferences that may be reasonably drawn therefrom in the light most favorable to the state and all evidence and inferences in conflict therewith are to be disregarded. *State v. Zimpher*, 552 S.W.2d 345 (Mo.App. 1977).

The state's evidence at trial showed the incidents that led to defendant's arrest and conviction began in the early morning hours of October 26, 1976. Officers of the St. Louis Housing Authority and the St. Louis Police Department responded to a report of a suspect firing a pistol in a housing project on the city's near south side. While at the scene of the shooting, an unrelated incident began when officers heard a woman screaming, "help, he's going to kill me...." When officers reached the woman and asked who was trying to kill her, she pointed in the direction of 1304 S. 14th Street where a man and woman were heading toward the rear of a building.

Housing Authority officers quickly detained the man, who was later identified as the defendant. The officers then made a protective search of the defendant. A vial later identified as phencyclidine, or PCP, was discovered stuck in the defendant's waistband. When defendant saw the vial, he told officers, "Man, it aint's nothing but a little whack." Other testimony indicated the defendant may have referred to the vial contents as "water." Both "whack" and "water" are street names for the drug PCP.

St. Louis police were called to the scene. Police read the defendant his *Miranda* rights and took him into custody.

The defense and this appeal revolve around the testimony of two key witnesses. The gist of their testimony was used by the defense to construct a motive and proof of false arrest. Thomas Blake, a former Housing Authority guard and cousin of the defendant, testified that another guard who detained the defendant for drug possession had previously robbed and beaten the defendant. The other defense witness, Rita Dilworth, was with the defendant when he was initially detained. She testified a Housing Authority guard beat the defendant and no drugs were seized from him before he was taken into custody.

From the outset, we find several of the defendant's points not preserved for appeal either under Rule 81.12 or the general rule

that timely objection to error be made as a predicate to appellate review. *State v. Toney*, 680 S.W.2d 268 (Mo.App.1984). Given the nature of defendant's defense and this court's discretion under Rule 30.20 to search for plain error that results in manifest injustice or miscarriage of justice, we have reviewed the 347 page transcript and find no error.

Because of our review, we will deal with defendant's points as they were presented. Defendant's first point assigns error to the trial judge's failure to suppress and the state's failure to disclose statements the defense contends are favorable to the accused. The defense cites *Brady v. State of Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny, *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1975) and *Trimble v. State*, 693 S.W.2d 267 (Mo.App.1985) for a proposition of law the state does not dispute. At issue here is the testimony of the St. Louis Police Sergeant who arrested the defendant. His testimony differed from the Housing Authority guards in that he quoted the defendant as referring to the substance in the bottle as water.[1] At oral arguments, the state pointed out to defendant's counsel that earlier testimony indicated "water" was a street name for PCP. The misunderstanding, which defendant's counsel indicated he was laboring under at that time, would explain why defendant insisted that the sergeant's testimony was exculpatory. However, defendant's reply brief submitted after oral arguments, perpetuates his argument that the sergeant's testimony was exculpatory.

This tenuous argument may not be considered by this court because of defendant's failure to object to the sergeant's testimony during the trial. *State v. Crespo*, 664 S.W.2d 548 (Mo.App.1983). In addition, conflicts in evidence and the determination of the credibility and weight to be given to testimony are within the province of the trier of fact and are not cognizable on appeal. *State v. Giffin*, 640 S.W.2d 128 (Mo.1982).

---

1. The officer's complete testimony was: "Basically what he said was, 'You mother-fuckers don't have anything. That water in their [sic] ain't shit! You're just fuckin' with me.'"

■ Even under plain error review, defendant's argument fails on this point. While respondent focuses on the inculpatory rather than exculpatory nature of defendant's remarks to the sergeant and by implication its compliance with Rule 25.-03(A)(9) requiring voluntary disclosure of exculpatory statements, we understand the defendant's complaint to say the sergeant's testimony took him by surprise.

The record fails to support defendant's undue surprise argument, however, in that the Housing Authority guard who testified first to the defendant's admissions also said the defendant may have referred to the substance in the bottle seized as "water" and the term was a common street name for PCP. With similar previous testimony, defendant cannot be heard to claim surprise before this court. Point denied.

The breadth of defendant's second point covers a litany of complaints but in the main, defendant argues that statements made by a woman that defendant was trying to kill her were not only inadmissible hearsay but also used by the prosecution in a prejudicial manner.

■ The state offers alternative grounds for the admissibility of the statement. The first ground is that the statement is "res gestae" or under the more modern description of the hearsay exception, an excited utterance. The validity of the exception has been recognized when the declarant has been subjected to a startling event, the statement relates to that event and the declarant has not had time to reflect on the event. *State v. Scott,* 716 S.W.2d 413 (Mo. App.1986). The key test in overcoming the hearsay ban is that the excited utterance was made under such circumstances as to indicate trustworthiness. *State v. Boyd,* 669 S.W.2d 232, 234 (Mo.App.1984).

When testimony, as in this case, indicates several officers at the scene of an unrelated incident heard a woman scream, witnessed her flight and then quickly question her as to the cause, the fundamental foundation of trustworthiness that the excited utterance exception has been built upon has been satisfied.

Thus, we do not need to reach the merits of the state's alternate grounds that the woman's statement is not being offered for the truth of the matter asserted but to explain the officer's initial contact with defendant.

■ Our concern instead is focussed on a much more serious charge unanswered by the state but succinctly made by the defendant's question of whether 80 references to the "screaming lady" or "the lady who was screaming he is trying to kill me" was prejudicial to the defendant.

The inherent appeal of defendant's argument is quickly dispelled by a reminder of the general rules of appellate review that require an objection and proper request for relief as a predicate to examination of a matter arising during trial. *State v. Evans,* 639 S.W.2d 820, 822 (Mo.1982). Defendant's complaint rekindles the wisdom of the long-standing general rule that if a party believes a remark is prejudicial, he should object immediately and afford the court an opportunity to correct an erroneous impression. *State v. Nevills,* 530 S.W. 2d 52, 54 (Mo.App.1975). Defendant compounded his failure to allege prejudicial error by failing to raise the point in his motion for a new trial. By raising it for the first time in his brief on appeal, nothing has been preserved for review. *State v. Stucker,* 518 S.W.2d 219, 221 (Mo.App. 1974). As indicated earlier in the opinion, our standard is governed by plain error and we find none. Point denied.

■ The impeachment of the defense's second key witness forms the basis of appellant's next point on appeal. Defendant's claims that impeachment of witness Rita Dilworth with an admission that she previously used PCP was so prejudicial it destroyed her testimony that defendant had been beaten and the bottle of PCP probably planted on his person.

To support his argument, defendant cites a line of cases that hold evidence that an automobile driver had been drinking prior to an accident may not be admitted absent a showing intoxication contributed to the accident. Defendant also cites *State v. Beck,* 745 S.W.2d 205, 207–08 (Mo.App. 1987), where the court held evidence that a passenger was in possession of valium was

improperly introduced in her driver's trial for possession of marijuana.

Although both lines of cases used by defendant are not on point, we will distinguish the *Beck* case to show the fallacy of defendant's argument. In *Beck*, we held the evidence of the passenger's drug possession was an impermissible effort by the prosecutor to establish the guilt of a defendant by virtue of his association with another. Unlike the defendant's case, the testimony of the passenger was not at issue but in dispute were her actions in swallowing pills as officers were arresting the driver. In *Beck* we held it may be permissible for the officers to testify they witnessed the passenger swallowing pills to explain the circumstances of arrest but further testimony that lab tests had found the pills were valium was beyond the scope necessary to reconstruct the arrest scene.

The state correctly points out the admission of Rita Dilworth that she had previously used PCP was solicited by the prosecution to test the credibility of the defense witness. Our cases hold that a witness may be questioned on whether or not she committed or admitted committing a specific crime. *State v. Lynch*, 528 S.W.2d 454, 457 (Mo.App.1975); *State v. Williams*, 492 S.W.2d 1 (Mo.App.1973). The purpose of such questions is to test the credibility of a witness however irrelevant the acts may be to the facts in issue and however disgraceful the answers may be to the witness. *State v. Long*, 201 Mo. 664, 100 S.W. 587, 590 (1907). The rule offers the witness two avenues of protection. The first is the ability to invoke her right against self-incrimination and the second is to bind the examiner by the witnesses' answer. *Lynch*, 528 S.W.2d at 457.

The rule is further buttressed by the fact the latitude and extent of cross-examination for purposes of impeachment rests with the trial court's discretion. Absent a showing of abuse, the trial court's judgment will be upheld on review. *State v. Johnson*, 549 S.W.2d 348, (Mo.App.1977). We cannot say in this case the trial judge abused his discretion. Point denied.

Defendant's next point alleges statements made by the defendant after officers seized the bottle from his possession should have been suppressed first because the statements were the product of an illegal search and further that the statements were made in the absence of any *Miranda* warning to the defendant.

■ Defendant has failed to include a transcript of his motion to suppress hearing so he has failed to preserve the issue for appeal. *State v. Ball*, 622 S.W.2d 285, 291 (Mo.App.1981). In addition, defendant did not challenge the admission during the trial and the point is not properly preserved for review and can only be considered under plain error. *State v. Toliver*, 544 S.W.2d 565 (Mo. banc 1976).

■ The state contends the admissions made by defendant were voluntary. Statements made voluntarily and spontaneously by a suspect may be admissible even in the absence of a *Miranda* warning. *State v. Kent*, 697 S.W.2d 216 (Mo.App.1985). The record before us shows the defendant's statements were voluntarily made and not the product of custodial interrogation. The trial court was within its discretion in overruling defendant's motion to suppress the admissions. We are satisfied no error affecting substantial rights resulting in manifest injustice or a miscarriage of justice has occurred here. Point denied.

■ Defendant's next argument seeks to invoke the dictates of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and its prohibition against purposeful discrimination in selection of the petit jury.

The complete text of defendant's point and argument is as follows:

The court erred in denying the defendant a new trial because the prosecutor's conduct violated the standards set for in *Batson vs. Kentucky* and *Swain vs. Alabama* (citations omitted) in that the defendant in this case was black and the state used all of its challenges to strike black jurors, which emphasized the fact that in a prior partial trial of this same case which ended in a mistrial, the prosecutor used 5 out of 6 challenges to strike black persons from the jury panel.

It is clear that in this case the Circuit Attorney struck all black persons and

this was an essentially repeat performance of the earlier aborted trial. Again the cases which set the standards are contained in the point itself. In this case the circuit attorney's explanation is contained in the record which was made and clearly does not meet *Batson.*

The *Batson* decision represents the evolution of a delicate balancing between the prosecutor's historical privilege of peremptory challenge and the constitutional prohibition on exclusion of persons from jury service on account of race. *Batson,* 106 S.Ct. at 1720 citing *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). To achieve that balance the court in *Batson* set up a three-part test to determine whether peremptory challenges were valid. The test as interpreted in *State v. Jones,* 747 S.W.2d 229, 231 (Mo.App.1988), requires first that the defendant and the excluded jurors be members of the same cognizable racial group. Second, defendant may rely on the fact that the peremptory challenge constitutes a jury selection practice that permits discrimination. And third, these facts and other relevant circumstances must raise an inference of racial discrimination by the prosecutor. It is the third prong of this test that defendant completely ignores. The state makes this point by arguing in its brief that "it is not enough to scream *Batson* and demand a new trial."

We delve on this point because of the increasing number of *Batson* claims being made to this court. Counsel would be wise to remember that the *Batson* court commended the trial court as being in a superior position to evaluate charges of discrimination. Counsel should also recall that it is a fundamental requirement of appellate procedure that errors be pointed out to the trial judge in order to be preserved for review.

We note that defendant's motion for a new trial claimed the prosecutor's peremptory strikes deprived him of a jury of his peers since the defendant came from a poor area of St. Louis as did the jurors that were struck. This differs from the grounds argued here and therefore the question has not been preserved for appel-

late review. Rule 29.11(d). *State v. Goode,* 721 S.W.2d 766 (Mo.App.1986). Point denied.

■ Defendant's final point argues the alleged unfairness of the defendant being deprived of the opportunity of testifying on his own behalf because his counsel feared impeachment by defendant's prior record.

The challenge to impeachment of a defendant through his criminal record is not novel. Section 491.050 RSMo 1986 specifically allows impeachment of a defendant by his prior record of conviction and challenges to the statute have been repeatedly denied. *See State v. Graves,* 352 Mo. 1102, 182 S.W.2d 46 (1944); *State v. Swisher,* 364 Mo. 157, 260 S.W.2d 6 (banc 1953) and *State v. Busby,* 486 S.W.2d 501, (Mo.1972).

We covered the issue most recently in *State v. Madewell,* 605 S.W.2d 205 (Mo. App.1980) and concluded once again the state is entitled to inquire about prior convictions of a defendant to affect his credibility. No new arguments have been advanced by defendant here to merit reconsideration of the issue. Point denied.

Judgment affirmed.

STEPHAN, P.J., and PUDLOWSKI, J., concur.